421 So.2d 623 (1982)
SANS SOUCI, a Florida General Partnership, Appellant,
v.
DIVISION OF FLORIDA LAND SALES AND CONDOMINIUMS, DEPARTMENT OF BUSINESS REGULATION, State of Florida, Appellee; La Plaza Condominium Association, Inc., a Florida Corporation Not for Profit, On Behalf of Itself and All Other Condominium Unit Owners at Sans Souci, a Condominium, Fort Pickens Road, Pensacola Beach, Florida, Similarly Situated, Appellees.
No. AG-137.
District Court of Appeal of Florida, First District.
October 21, 1982.
*624 Charles L. Hoffman, Jr., of Shell, Fleming, Davis & Menge, P.A., Pensacola, for appellant.
Helen C. Ellis, Staff Atty., Div. of Florida Land Sales and Condominiums, Tallahassee, for appellees.
ERVIN, Judge.
Appellant Sans Souci seeks review of final agency action by the Division of Florida Land Sales and Condominiums ("Division") in the form of a declaratory statement determining the rights of various condominium unit owners. Specifically, the Division determined that Sans Souci, the holder of a condominium land lease, did not have the right to exercise a rent escalation clause, thereby raising the unit owners' rent. On appeal, Sans Souci contends that the Division did not have the authority to enter such an order, in that the Division's order effectively violates the constitutional prohibition against the impairment of contractual obligations. We affirm the authority of the Division to enter the underlying order, but because we find the record inadequate to permit review of the constitutional issue, we remand jurisdiction to the Division for further proceedings, including development of a record permitting review of such issue on either of two alternative grounds.
*625 In 1970, Vista Deluna Condominiums leased property from the Santa Rosa Island Authority, a political entity. Some time later, Gulf Florida Development Corp. received an assignment of Vista Deluna's interest. Gulf Florida then moved forward with the development of the Sans Souci condominiums project. Although the date is uncertain, Gulf Florida filed its declaration of condominium and, as exhibit H to the declaration, a master copy of a sublease.
The master sublease was the model copy of subleases to be executed between Gulf Florida and each purchaser of a condominium unit at Sans Souci. The literal wording of the lease reflects that Gulf Florida, the sublessor, agreed to lease a condominium unit and an indoor parking space to the unit purchaser.[1] This sublease contained a rent escalation clause, permitting a periodic escalation of the rent based on the U.S. Department of Labor Consumer Price Index. The sublease provided for a term ending in the year 2069. A number of the units had been subleased by Gulf Florida, when on June 2, 1977, Gulf Florida assigned its interest in the subleases to Sans Souci, a partnership. In late 1980, Sans Souci determined to exercise its contractual right to raise the rent on its subleases.
The condominium unit owners, through their condominium association, sought a Section 120.565, Florida Statutes (1979),[2] declaratory statement from the Division in order to preclude Sans Souci from raising the rent by exercising the escalation clause in the sublease. The Division granted Sans Souci's motion to intervene. On the merits the Division determined that Section 718.401(8), Florida Statutes (Supp. 1976),[3] bars the use of escalation clauses in condominium land leases; that this section was applicable to the facts of this case; that this section went into effect on January 1, 1977, well before the June 2, 1977 date on which Sans Souci was assigned its interest in the lease as sublessor; that by virtue of the assignment, Sans Souci took subject to all Florida laws then existing, including Section 718.401(8), and that there could be no unconstitutional impairment of Sans Souci's contractual obligation, since Section 718.401(8) was in effect prior to the assignment of any interest in the lease to Sans Souci.
As to the jurisdictional problem, appellant asserts that a Section 120.565 declaratory statement is an improper vehicle to use in this case, because the appellant's constitutional rights are at stake, to wit: the application of Section 718.401(8) unconstitutionally impairs the appellant's contractual *626 rights and appellee's obligations under the escalation clause. It is appellant's view that an administrative body has no authority to determine one's constitutional rights under a Florida law in instances whereby application of the law will prove to be unconstitutional.
We disagree. It is well established that the mere assertion "of a constitutional issue should not excuse a failure to exhaust administrative remedies." Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695, 699 (Fla. 1978). We find nothing in the record to suggest that this court will not be able ultimately to accord the appellant a determination of its constitutional rights. Cf. Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 400 So.2d 66 (Fla. 1st DCA 1981), rev. docketed, no. 61,027 (Fla. orally argued April 14, 1982); Rice v. Department of Health & Rehabilitative Services, 386 So.2d 844 (Fla. 1st DCA 1980). Certainly, the appellant has not yet been able to make a convincing showing that the Administrative Procedure Act's "impressive arsenal of varied and abundant remedies" is inadequate to achieve that aim. State ex rel. Department of General Services v. Willis, 344 So.2d 580, 590 (Fla. 1st DCA 1977). The appellant has shown no reason for, nor even sought, circuit court intervention seeking a declaration of the Division's lack of jurisdiction to rule on this matter, or of the facial invalidity of Section 718.401(8).
In essence, the Division has merely determined the applicability and interpretation to be placed upon Section 718.401(8), Florida Statutes (Supp. 1976). This is a task for which the Division, given its regulatory responsibility over condominiums, has special expertise. Agency determinations with regard to a statute's interpretation and applicability will normally be accorded great deference, unless there is clear error or conflict with the intent of a statute. See State, Department of Health & Rehabilitative Services v. Hall, 409 So.2d 193, 195 (Fla. 3d DCA 1982); Harris Corp. v. Department of Revenue, 409 So.2d 91, 93 (Fla. 1st DCA 1982) (Ervin, J., specially concurring); ABC Liquors v. Department of Business Regulation, 397 So.2d 696, 697 (Fla. 1st DCA 1981). "In such a case, the constitutional question is not independent of the agency's actions on the merits, but is inseparable from it, and the constitutional question is necessarily phrased, ingeniously or ingenuously, as a variation of the affected party's original position on the nonconstitutional question." Key Haven Associated, at 71.
The agency has acted properly under Section 120.565, Florida Statutes (1979), since that statute manifests the legislature's intent that, when invoked, agency declaratory statements "shall state the agency's opinion of how a specified statute applies to a particular individual in his particular circumstances." State of Florida, Department of Environmental Regulation v. Falls Chase Special Taxing District, 424 So.2d 787 (Fla. 1st DCA, 1982) (Robert Smith, C.J., dissenting). Further, Section 120.565, when read together and harmonized with Section 718.401, Florida Statutes (1981), providing that condominiums may be created on lands held under lease for no less than 50 years, evinces the logical deduction that the legislature wisely perceived that problems of precisely the type involved in the case at bar would arise. In order to ensure that condominium leases comply with the provisions of Chapter 718, Florida Statutes, Section 718.501(1) affords the Division the power to (1) determine whether any person has violated Chapter 718; (2) interpret the chapter, and (3) issue annually to condominium associations a summary of its declaratory statements.[4]
*627 By rule, as required by Section 120.565,[5] the Division, as a sub-agency of the Department of Business Regulation, has the power to issue declaratory statements to any party "who is affected or substantially affected by any Division's statutory provisions... ." Fla. Admin. Code Rule 7-3.01. The condominium unit owners sought a declaratory statement as to the applicability of Section 718.401(8) to their sublease escalation clauses, and we find that the Division properly issued a Section 120.565 declaratory statement. As such, the declaratory statement constitutes final agency action that is properly before this court for direct review, and this court may confront "the inseparable" constitutional issue. Key Haven Associated at 71.
Turning to the Division's conclusions of law, we observe they state that the challenged escalation clauses relate to ground or land leases. The appellant contends that the leases do not fall within the regulatory perimeters of Section 718.401(8), because the master sublease refers to a condominium unit, not land. We reject this argument. The master sublease by its own terms subleases to the purchaser of a condominium unit his or her own unit. We are unable to understand how or why someone would purchase a unit from a developer and at the same time agree to lease the same unit from the developer until the year 2069.
This ambiguity is one that may be unraveled by the agency as a matter of law, since the parties' intent can be ascertained from the terms of the written master sublease. Cf. State Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238 (Fla. 1st DCA 1981); Key Haven Associated, at 71; Peacock Construction Co. v. Modern Air Conditioning, Inc., 353 So.2d 840, 842 (Fla. 1977), see also 11 Fla.Jur.2d Contracts § 102 (1979). Because the master sublease was drafted by the appellant's predecessor in interest, Gulf Florida, the ambiguity should be construed most strongly against the appellant. Rubin v. Beville, 132 So.2d 783, 785 (Fla. 1st DCA 1961); 11 Fla.Jur.2d Contracts, § 106 nn. 78-80 (1979). Our consideration of both the facts in the foregoing paragraph surrounding execution of the individual subleases, and the literal wording of the subleases indicates that they involve subleases of land. First, the subleases call for the lease of a condominium unit and a parking space. As a practical matter, it seems certain that at least some of those units and parking spaces would be placed on land.
Second, the subleases, as characterized by the master sublease, are precisely what the title expressly states. They are subleases. Axiomatically, for there to be a sublease there must also be a lease. The lease in this case is between the Santa Rosa Island Authority and, by assignment, Sans Souci. It is a lease for land, and the lease and its terms are specifically incorporated into the subleases. Not coincidental is the fact that the lease and the subleases all terminate in December, 2069. Clearly, the parties at bar could not have intended to have entered into a sublease of condominium units, since the Santa Rosa/Sans Souci lease was one for land.
*628 Having determined that the subleases were land subleases, we next confront appellant's contention that application of Section 718.401(8) unconstitutionally impairs the contractual obligations embodied in the subleases. The conclusions of law by the Division include a determination that Section 718.401(8), effective as of January 1, 1977,[6] was applicable, because appellant Sans Souci had no rights in the subleases until June 2, 1977. However, for purposes of considering whether there has been an unconstitutional impairment of a contractual obligation by statutes regulating condominiums, such as Section 718.401(8), Florida Statutes (Supp. 1976), there must be determined the date of filing of the superior declaration of condominium and its subordinate documents, such as the master sublease, since such date controls for purposes of fixing the parties' rights and obligations. Tradewinds of Pompano Association, Inc. v. Rosenthal, 407 So.2d 976, 977 (Fla. 4th DCA 1981); accord, Hovnanian Florida, Inc. v. Division of Florida Land Sales, 401 So.2d 851 (Fla. 1st DCA 1981), rev. denied, 415 So.2d 1360 (Fla. 1982). Thus, the law on the date of filing of the foregoing documents engrafts the law of Florida into the documents, as if it were expressly stated in the documents. Cf. National Merchandise v. United Service Automobile Association, 400 So.2d 526, 531 (Fla. 1st DCA 1981).
It is unclear as to precisely what date the declaration of condominium and its attached exhibit, the master sublease, were filed, since the declaration was not made a part of the record on appeal, nor is a recorded copy of the master sublease included in the record. The record indicates that many of the subleases between Gulf Florida and the individual unit owners were consummated during 1974 and 1975. It is therefore obviously reasonable to conclude that the master sublease was recorded sometime prior to those dates. The Division, by reaching its legal conclusion, has ignored the date of filing of the condominium declaration and master sublease. Instead, the Division relies on June 2, 1977, the date Gulf Florida assigned its rights to Sans Souci, as fixing Sans Souci's rights and obligations.
Because the record before us is insufficient to sustain the Division's finding that the law in effect at the time of the execution of the lease between Gulf Florida and Sans Souci controlled the question of whether Sans Souci was permitted to escalate the rents, that finding must be reversed and the cause remanded for the purpose of conducting further proceedings directed to the following two alternative issues: First, did the superior declaration of condominium or its master sublease, incorporate the "automatic amendment theory", permitting the declarations to be amended from time to time, by later amendments of the Condominium Act? If so, there would be both a legal and evidentiary basis for the Division's finding, now necessary for the Division to consider. If not, the Division would next be required to determine whether the lease assignment between Sans Souci and Gulf Florida was a novation.[7]

I.
In order for the Division to address the first alternative issue, the record will require supplementation by the addition of a recorded copy of the declaration of condominium. See Suntide Condominium Association, Inc. v. Division of Florida Land Sales & Condominiums, 409 So.2d 65 (Fla. 1st DCA 1982). Although, as stated, the date of filing of the declaration of condominium *629 and the master sublease fixes the rights and obligations of the parties and will many times determine which statutes are applicable to a given cause, Tradewinds of Pompano, our research reveals that it has been routine for many developers to include a clause in their declarations of condominium incorporating the provisions of the Condominium Act by the reference "as the same may be amended from time to time."[8] Known as the "automatic amendment theory,"[9] the legal effect of such a clause is to apply all subsequent amendments of the Condominium Act to the declaration, as if expressed therein. See Century Village, Inc. v. Wellington, E, F, K, L, H, J, M, & G, Condominium Association, 361 So.2d 128, 132-133 (Fla. 1978); 17 Am.Jur.2d Contracts § 257 n. 18 (1964).
We acknowledge that the master sublease depicted in the record before us has a clause incorporating all existing laws without using language bringing the "automatic amendment theory" into play. Such omission, is not crucial, however, to the determination of the first issue because, as explained in Cole v. Angora Enterprises, Inc., 403 So.2d 1010, 1012 (Fla. 4th DCA 1981), it is the language in the superior declaration of condominium that controls over the subordinate master sublease language. In Cole, the Fourth District noted that the lease "was obviously intended to be an integral part of the whole," and that the declaration of condominium referred to the "attached" lease. The case at bar appears very similar, since the master sublease refers to itself as "Exhibit H to Declaration of Condominium For Sans Souci."[10]
Thus, if the condominium declaration includes the "from time to time" language that calls for application of the "automatic amendment theory," it would be entirely appropriate for the Division to construe the declaration and the master sublease, two form documents drafted by the developer, most strictly against the drafter and apply the "automatic amendment theory" to the master sublease.[11] As expressed by Judge Letts:
It is perfectly obvious that the "from time to time" language was intended to provide a safety valve and fall back position for the developer to insure the continuing integrity of the condominium from the vagaries of the legislature and the appellate courts. However, the developer-lessor should not expect to be able to invoke the "from time to time" language when it suits its purpose to do so and reject it when not to its taste and advantage.
Cole, at 1012.
Assuming that the automatic amendment theory is applicable, the law in effect at the time the agency rendered its declaratory statement would control the condominium declaration and master sublease. Section 718.401(8)(a), Florida Statutes (1981),[12] *630 quite clearly states the inclusion or enforcement of land lease rent escalation clauses of the type in the master sublease is void as being contrary to public policy. Although the Division's determination was based upon Section 718.401(8), Florida Statutes (Supp. 1976), we view that section as having a similar prohibition against the inclusion or enforcement of rent escalation clauses in residential condominium land leases as is provided in the 1981 statute. And, while the wording in the version of the statute as applied by the Division in the case at bar is slightly different from the wording in the 1981 version, we view such change as formal only, acting merely as a vehicle for clarification of existing policy. Williams v. Hartford Accident and Indemnity Co., 382 So.2d 1216, 1220 (Fla. 1980); Speights v. State, 414 So.2d 574, 577 (Fla. 1st DCA 1982).

II.
If no automatic amendment clause is contained in the condominium declaration or the master sublease, it will be necessary for the Division to determine next whether the assignment to Sans Souci may be considered a novation. Although normally an assignment involves only the act of a new party, the assignee, stepping into the shoe of the assignor, People v. Wurster, 97 Ill. App.3d 104, 52 Ill.Dec. 648, 422 N.E.2d 650, 652 (1981), resulting in the assignee to the lessor's interest in a term of years acquiring all the rights of the lessor, 51C C.J.S. Landlord and Tenant § 42d (1968), an assignment, under certain circumstances, can also be a novation. See, e.g., Moring v. Miller, 330 So.2d 93 (Fla. 1st DCA 1976) and Reeves v. Don L. Tullis & Associates, Inc., 305 So.2d 813 (Fla. 1st DCA 1975). One Florida court has observed that "[a] novation is a mutual agreement between the parties concerned for the discharge of a valid existing obligation by the substitution of a valid new contract... ." Miami National Bank v. Forecast Construction Corp., 366 So.2d 1202, 1204 (Fla. 3d DCA 1979). However, the drafters and reporters of the American Law Institute would refer to the foregoing as only a substitute contract. See 2 Restatement (Second) of Contracts § 279 (1981). Novations are more correctly viewed as a particular genre of substitute contract: "A novation is a substitute contract that includes as a party one who was neither the obligor nor obligee of the original duty." Id. at § 280.
If the Sans Souci assignment may be properly regarded as a novation, there would be no unconstitutional impairment of a contractual obligation. Plainly, the obligation of a contract is not impaired if the parties agree to substitute a new contract for a prior agreement. Higbie v. County of Los Angeles, 47 Cal. App.2d 281, 117 P.2d 933, 938 (1941); 16A Am.Jur.2d Constitutional Law § 695 n. 97 (1979). Hence, we would be required to affirm the Division's determination to apply Section 718.401(8), because the statute, effective on January 1, 1977, came into existence prior to the June 2, 1977 assignment of the leasehold. A "lease made subsequent to the enactment of a statute cannot be impaired by it." Edgar A. Levy Leasing Co. v. Siegel, 258 U.S. 242, 249, 42 S.Ct. 289, 292, 66 L.Ed. 595 (1922).
As a general rule, there are four essential elements necessary to form a substitute contract or novation, including: (1) the existence of a previously valid contract; (2) the agreement of all the parties to a new contract; (3) the extinguishment of the original contractual obligation, and (4) the validity of the new contract. City of Buford v. International Systems, Inc., 158 Ga. App. 682, 282 S.E.2d 165 (1981); Moody v. Bogue, 310 N.W.2d 655 (Iowa App. 1981); and Sims v. Craig, 96 N.M. 33, 627 P.2d 875 (1981); accord, United Bonding Insurance Co. v. Southeast Regional Builders, Inc., 236 So.2d 460, 463 (Fla. 1st DCA 1970). The record before us appears to satisfy the first and fourth requirements, but we cannot ascertain, due to the state of the record, whether the assignment satisfies the second and third prerequisites. Consequently, the case will have to be remanded for further proceedings necessary to determine this issue, including the supplementation of the record, if possible. See Suntide Condominium *631 Association, Inc. v. Division of Florida Land Sales and Condominiums, 409 So.2d 65, 67 (Fla. 1st DCA 1982).
The parties should recognize that a novation is a form of affirmative defense, and the party who advocates a novation has the burden of proving it by clear, satisfactory evidence. Rodeway Inns of America v. Alpaugh, 390 So.2d 370, 372 (Fla. 2d DCA 1980); Miami National Bank, 366 So.2d at 1204. Therefore, it will be the responsibility of the appellee La Plaza Condominium Association and the unit sublessees to present satisfactory proof, since the novation is to their benefit.
We must now analyze what proof is necessary to sustain a finding that the assignment before us may be considered a novation. First, there must be proof of an extinguishment of the original contractual obligation. As one treatise has noted, "A novation by the substitution of landlords may result where a landlord has transferred his interest in the premises and the tenant accepts the new landlord and releases the old one from his obligations under the lease." 66 C.J.S. Novation § 18(2) n. 17 (1950). A sublessor, such as Sans Souci's predecessor in interest, has certain obligations to its sublessees, including that of maintaining the sublessor in quiet possession through an implied covenant of quiet enjoyment. See Hankins v. Smith, 103 Fla. 892, 138 So. 494, 496 (1931); 34 Fla.Jur.2d Landlord & Tenant § 49 (1982). Consequently, the evidence must show not only an acceptance by the sublessees of Sans Souci, as the new sublessor, but it must also show a discharge by the sublessees of Gulf Florida's obligations, such as its keeping the sublessees in quiet possession of their land. Knapp v. Guerin, 144 La. 754, 81 So. 302, 304-305 (1919).
Furthermore, the sublessees' debts and any other obligations to Gulf Florida must be extinguished. The fact that the debts for the same terms and amounts may have merely been transferred to Sans Souci is no bar to a determination that the original contractual obligation was extinguished, since a novation may occur if the performance to be rendered to a new creditor or obligee is the same as under an original contract. Restatement, supra, at § 280 comment a. A problem arises, however, if the older debt and concomitant obligations have not been extinguished, and the sublessees would somehow continue to be liable under the prior contract to Gulf Florida.
The Division must also ascertain whether the sublessees have consented to Sans Souci as the new sublessor. State Savings & Loan Association v. Kauaian Development Co., 50 Haw. 540, 445 P.2d 109, 120 (1968); Knapp, 81 So. at 305. Consent must be express and will not be implied. 66 C.J.S. Novation, supra, § 18 at n. 19. This is because a novation is predicated upon consent, and the implication of consent based upon actions of the sublessees, such as the payment of rent to the new sublessor, does not rise to the level of the express consent required. Knapp, 81 So. at 305; accord, Prucha v. Guarantee Reserve Life Insurance Co., 358 So.2d 1155, 1157-1158 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 459 (Fla. 1979); cf. Palmetto Manufacturing Co. v. Parker & Anderson, 123 Ga. 798, 51 S.E. 714, 715-716 (1905).
The issue of consent is particularly troublesome in that there is a distinct difference of opinion among the various jurisdictions in regard to the requirement that the consent of all parties to the novation must be contemporaneous. See 58 Am.Jur.2d Novation § 19 (1971); Annot., 61 A.L.R.2d 755 § 4 nn. 18, 20 (1958). Some jurisdictions apparently do not require a contemporaneous consent. See Greenwood Leflore Hospital Commission v. Turner, 213 Miss. 200, 56 So.2d 496 (1952); F.I. Somers & Sons, Inc. v. LeClerc, 110 Vt. 408, 8 A.2d 663, 665 (1939); Dunn v. Clinchfield R. Co., 19 F.2d 810, 813 (6th Cir.1927), cert. denied, 275 U.S. 557, 48 S.Ct. 117, 72 L.Ed. 424 (Tenn. law); Silver v. Morin, 74 Mont. 348, 240 P. 825, 826 (1925); Martin v. Leeper Bros. Lumber Co., 48 Okla. 219, 149 P. 1140 (1915). Other jurisdictions have found a purported novation to fail in the absence of a contemporaneous consent by all involved. Scott v. Wyoming Oils, 52 Wyo. 433, 75 P.2d 764, 772 *632 (1938); Swift & Co. v. Madden, 35 S.W.2d 59 at 59 (Mo. App. 1931); Horn v. McKinney, 5 Ind. App. 348, 32 N.E. 334, 335 (1892); cf. Scarboro v. Universal C.I.T. Credit Corp., 364 F.2d 10, 14 (5th Cir.1966) (Ga. law).
Apparently, no Florida court has squarely confronted this issue. We have attempted to ascertain the reasoning for requiring a contemporaneous consent and can only point to rather unpersuasive language in Wyoming Oils, wherein the Wyoming Supreme Court stated that a novation "cannot be made binding by the subsequent acquiescence or ratification without a new consideration or the existence of facts which will constitute an estoppel." 75 P.2d at 772. Without belaboring the matter, we are unpersuaded by this argument and prefer to adopt the more modern position advocated by the drafters of the Restatement (Second) of Contracts. The drafters have noted that an assent or consent at the same place or time need not be demanded. Thus, as applied to the present case, all that is required is that the consent should be so certain as to assure the Division that the manifestations refer to one another. Restatement, supra, § 280 at comment c.
In proving the existence of: (1) the extinguishment of the debt between Gulf Florida and the sublessees and (2) the agreement of all parties, the sublessees will be required to present documentary proof, because the sublease novations involve a term in excess of one year. Rodeway Inns of America, 390 So.2d at 372 n. 1. If the documentation exists, it should be included in the record.
Affirmed in part, reversed in part, and remanded for further consistent proceedings.
McCORD and SHAW, JJ., concur.
NOTES
[1] Apartment in
SANS SOUCI, a Condominium
THIS SUBLEASE AGREEMENT, executed this date by and between Gulf Florida Development Corporation, a Florida corporation, hereinafter called "Sublessor", and ___________, hereinafter called "Sublessee".
WITNESSETH:
Sublessor, in consideration of the rent hereinafter reserved, the covenants by Sublessee herein contained, and other good and valuable considerations, does hereby lease, rent, let and demise unto said Sublessee, Apartment No. ____, SANS SOUCI, a Condominium as per Declaration of Condominium thereof recorded in Official Record Book ___, page ___, public records, Escambia County, Florida, together with Indoor Parking Space No. ___, upon the following terms and conditions:
[2] Section 120.565 states in relevant part:

Declaratory statement by agencies  Each agency shall provide by rule the procedure for the filing and prompt disposition of petitions for declaratory statements. A declaratory statement shall set out the agency's opinion as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his particular set of circumstances only... .
[3] Section 718.401(8), Florida Statutes (Supp. 1976), was enacted by Chapter 76-222, Laws of Florida, and states:

It is declared that the public policy of this state prohibits the inclusion or enforcement of escalation clauses in leases for recreational facilities, land or other commonly used facilities serving condominiums, and such clauses are hereby declared void for public policy. For the purposes of this section, an escalation clause is any clause in a condominium lease which provides that the rental under the lease shall increase at the same percentage rate as any nationally recognized and conveniently available commodity or consumer price index.
[4] Section 718.501(1), Florida Statutes (1981), states that the Division

has the power to enforce and ensure compliance with the provisions of this chapter [Chapter 718] and rules promulgated [Chap. 7D, F.A.C.] pursuant hereto relating to the development, construction, sale, lease, ownership, operation, and management of residential condominium units. In performing its duties, the Division shall have the following powers and duties:
a) The Division may make necessary public or private investigations ... to determine whether any person has violated this chapter or any rule or order hereunder, ...
* * * * * *
f) The division is authorized to promulgate rules, pursuant to Chapter 120, necessary to implement, enforce and interpret this chapter.
* * * * * *
h) The division shall annually provide each [condominium] association with a summary of declaratory statements and formal legal opinions relating to the operations of condominiums... ."
(e.s.) Additionally, a recent amendment to the "Condominium Act", tentatively assigned to Section 718.501(1)(g), states that "[t]he Division of Florida Land Sales and Condominiums shall establish procedures for the providing of notice to an Association when the Division is considering the issuance of a declaratory statement with respect to the declaration of condominiums or any related document governing in such condominium community." (e.s.) See Ch. 82-113, § 2, Laws of Florida.
[5] See Falls Chase, ___ So.2d ___, 7 FLW at 1575.
[6] See Ch. 76-222, § 6, Laws of Florida.
[7] We note that at least one additional legal theory  that of contractual unconscionability  might effectively invalidate the escalation clause at bar. This theory has been discussed in a number of recent Florida cases. See Steinhardt v. Rudolph, ___ So.2d ___, 7 FLW 1793 (Fla. 3d DCA, August 17, 1982); Kohl v. Bay Colony Club Condominium, Inc., 398 So.2d 865 (Fla. 4th DCA 1981), rev. denied, 408 So.2d 1094 (Fla. 1981); Bennett v. Behring Corp., 466 F. Supp. 689 (S.D.Fla. 1979), appeal dismissed, 629 F.2d 393 (5th Cir.1980). That the escalation clause is unconscionable is an issue neither raised nor argued below, or on appeal. Therefore, we do not address the issue in this opinion.
[8] The popularity of this clause is attested to by numerous Florida cases construing this type of clause. See Century Village, Inc. v. Wellington, E, F, K, L, H, J, M, & G, Condominium Association, 361 So.2d 128 (Fla. 1978); Sandalfoot South One, Inc. v. Sandalfoot Cove Country Club, Inc., 404 So.2d 752 (Fla. 5th DCA 1981); Cole v. Angora Enterprises, Inc., 403 So.2d 1010 (Fla. 4th DCA 1981); Coral Isle East Condominium v. Snyder, 395 So.2d 1204 (Fla. 3d DCA 1981), rev. denied, 407 So.2d 1105 (Fla. 1981); and Kaufman v. Shere, 347 So.2d 627 (Fla. 3d DCA 1977), cert. denied, 355 So.2d 517 (Fla. 1978).
[9] See Mandelkorn, Krul & Galt, Condominium Litigation, 33 U.Miami L.Rev. 911, 926-934 (1979).
[10] See Note 1.
[11] Similarly, if the sublease included the "from time to time" language in it, regardless of the inclusion of that language in the declaration of condominium, we would be inclined to construe such language against the drafter and apply the "automatic amendment theory."
[12] Section 718.401(8)(a), Florida Statutes (1981), states in pertinent part: "It is declared that the public policy of this state prohibits the inclusion or enforcement of escalation clauses in land leases or other leases or agreements for recreational facilities, land, or other commonly used facilities serving residential condominiums, and such clauses are hereby declared void for public policy... ." The Division's declaratory statement was rended on August 13, 1981. Since Section 718.401(8)(a), was effective on June 26, 1981, see Chapter 81-185, Section 17, Laws of Florida, the foregoing quoted section was applicable to the agency's determination.