448 So.2d 1116 (1984)
SANS SOUCI, a Florida General Partnership, Appellant,
v.
DIVISION OF FLORIDA LAND SALES AND CONDOMINIUMS, Department of Business Regulation, State of Florida, La Plaza Condominium Association, Inc., a Florida Corporation Not for Profit, On Behalf of Itself and All Other Condominium Unit Owners at Sans Souci, a Condominium, Fort Pickens Road, Pensacola Beach, Florida, Similarly Situated, Appellees.
No. AV-106.
District Court of Appeal of Florida, First District.
April 3, 1984.
*1118 Charles L. Hoffman, Jr., of Shell, Fleming, Davis & Menge, P.A., Pensacola, for appellant.
Daniel J. Bosanko, Staff Atty., Dept. of Business Regulation, Tallahassee, for appellees.
WIGGINTON, Judge.
The issue for our review is whether there was sufficient documentary evidence presented to the Division of Florida Land Sales and Condominiums for the division to find that an assignment of a master sublease effected a novation, thereby making section 718.401(8), Florida Statutes (Supp. 1976), applicable to the sublease to bar the sublessor's attempted exercise of a rent escalation clause contained in the sublease.[1] We hold that there was not sufficient evidence presented, and reverse.
This appeal follows division proceedings on remand from an earlier appeal to this Court reported at 421 So.2d 623 (Sans Souci I). To clarify the issue, we shall set forth in full the statement of the facts and case as appear in Sans Souci I:
In 1970, Vista Deluna Condominiums leased property from the Santa Rosa Island Authority, a political entity. Some time later, Gulf Florida Development Corp. received an assignment of Vista Deluna's interest. Gulf Florida then moved forward with the development of the Sans Souci condominiums project. Although the date is uncertain, Gulf Florida filed its declaration of condominium and, as exhibit H to the declaration, a master copy of a sublease.
The master sublease was the model copy of subleases to be executed between Gulf Florida and each purchaser of a condominium unit at Sans Souci. The literal wording of the lease reflects that Gulf Florida, the sublessor, agreed to lease a condominium unit and an indoor parking space to the unit purchaser.[1] This sublease contained a rent escalation clause, permitting a periodic escalation of the rent based on the U.S. Department of Labor Consumer Price Index. The sublease provided for a term ending in the year 2069. A number of the units had been subleased by Gulf Florida, when on June 2, 1977, Gulf Florida assigned its interest in the subleases to San Souci, a partnership. In late 1980, San Souci determined to exercise its contractual right to raise the rent on its subleases.
The condominium unit owners, through their condominium association, sought a Section 120.565, Florida Statutes (1979),[2] declaratory statement from the Division in order to preclude San Souci from raising the rent by exercising the escalation *1119 clause in the sublease. The Division granted San Souci's motion to intervene. On the merits the Division determined that Section 718.401(8), Florida Statutes (Supp. 1976),[3] bars the use of escalation clauses in condominium land leases; that this section was applicable to the facts of this case; that this section went into effect on January 1, 1977, well before the June 2, 1977 date on which San Souci was assigned its interest in the lease as sublessor; that by virtue of the assignment, San Souci took subject to all Florida laws then existing, including Section 718.401(8), and that there could be no unconstitutional impairment of San Souci's contractual obligation, since Section 718.401(8) was in effect prior to the assignment of any interest in the lease to San Souci.
421 So.2d at 625 (footnotes omitted). On appeal, we affirmed in part and reversed in part, ultimately concluding that the record before us was insufficient to sustain the division's finding that the law in effect at the time Gulf Florida assigned the lease and subleases to San Souci controlled the question of whether San Souci was permitted to escalate the rents. Specifically, we noted that the record was silent as to precisely what date the declaration of condominium and the master sublease were filed, that date being the controlling factor as to the applicability of section 718.401(8). Since we considered it reasonable to conclude that the date of filing was prior to 1974 and 1975, the years that many of the individual subleases between Gulf Florida and the condominium unit owners were consummated, id., at 628, we remanded the cause for further proceedings directed to the following two alternative issues:
First, did the superior declaration of condominium or its master sublease, incorporate the "automatic amendment theory", permitting the declarations to be amended from time to time, by later amendments of the Condominium Act? If so, there would be both a legal and evidentiary basis for the Division's finding, now necessary for the Division to consider. If not, the Division would next be required to determine whether the lease assignment between San Souci and Gulf Florida was a novation.
Id. (footnote omitted).
In its order on remand, the division concluded from the documentary evidence presented that the declaration of condominium, with its exhibit H, the master sublease, was filed on June 25, 1974, but contained no automatic amendment clause to permit the declaration to be amended by section 718.401(8). That conclusion is not contested. However, the division did find that an assignment to San Souci of the lease and sublease effected a novation of the obligation owed by the previous sublessor, Gulf Florida, to the sublessees, condominium unit owners. Resulting was a new obligation owed by San Souci, and the applicability of section 718.401(8) to the lease and sublease. Accordingly, the division declared, pursuant to section 120.565, that by virtue of section 718.401(8), San Souci could not exercise its escalation clause.
On appeal, San Souci raises six points for our review. Point I challenges the jurisdiction of the division in a section 120.565 declaratory proceeding to determine the issue of novation.[2] San Souci argues that section 120.565 grants the division the authority to interpret statutory provisions only, and not to involve itself in assignments of leases between private parties. On the contrary, we point out that section 120.565 contemplates the division's determining whether a particular statutory provision applies to the particular petitioner. As we recognized in our earlier opinion, and as we reiterate here, the issue of whether section 718.401(8) applies to the instant circumstances to void the escalation *1120 clause is inextricably tied to the issue of whether a novation was effected by the earlier assignment. Absent a finding of a new contract, the application of section 718.401(8), effective January 1, 1977, to San Souci's original contractual obligation would constitute an unconstitutional impairment of that obligation. That is, an assignment normally involves only the assignee's acquiring the rights of the assignor and not necessarily the obligations, unless it is found that the assignment was also a novation. San Souci, 421 So.2d at 629. Consequently, in order for the division to have rendered an accurate declaratory statement, it was necessary for it to have determined first the issue of novation.
Accordingly, in response to San Souci's Point III, the division was required by virtue of our direction in San Souci I, to consider the issue of novation, despite its not having been raised in the original declaratory statement proceedings. Unique to this area of the law, section 120.68(13)(a), Florida Statutes (1981), authorizes a reviewing court to provide whatever relief is appropriate "irrespective of the original form of the petition." Our ultimate task in the prior appeal was to review the division's action and to determine whether the division erred in applying section 718.401(8) to San Souci's sublease. Rice v. Department of Health and Rehabilitative Services, 386 So.2d 844 (Fla. 1st DCA 1980). That review and concomitant determination, to be complete, necessarily entailed consideration of whether the assignment created a new contract. As the record's posture was insufficient from which we could arrive at any conscientious conclusion on that subject, we were compelled to remand to the division for it to resolve the outstanding legal, and necessarily factual, issues. The division did nothing more than to properly comply with our mandate.
In Point II, San Souci questions whether it was denied due process of law when the division refused to grant its request for an evidentiary hearing. Section 120.565 does not specifically provide for an evidentiary hearing but does direct each agency to "provide by rule the procedure for the filing and prompt disposition of petitions for declaratory statements." Rule 7-3.01(4)(a)2, Florida Administrative Code, provides that the division, in its discretion, may conduct an evidentiary hearing prior to rendering its declaratory statement. Rule 7-3.02 sets forth the procedure for conducting the hearing.
In the instant case, although the division had the discretion to deny an evidentiary hearing, we hold that it abused its discretion in doing so under the circumstances. As stated above, the novation issue necessarily involved the division's considering mixed questions of law and fact, the resolution of which could have, and proved to, greatly impinge on San Souci's right to exercise its contractual prerogatives. Given the nature of the issue and the rights at stake, San Souci, or either of the parties, was due an evidentiary hearing.
San Souci's Points IV and V can be combined for consideration, and essentially attack the division's finding of a novation as being unsupported by the evidence. The real rub is the parties' discomfort with the standard set forth in San Souci I, by which the division was to measure the facts to determine whether a novation had been effected by the assignment. In San Souci I, we enumerated the essential elements necessary to form a novation. 421 So.2d at 630. The record before us satisfied the first and fourth elements, i.e., the existence of a previously valid contract and the validity of the new contract; but we could not ascertain, due to the state of the record, whether the assignment satisfied the second and third prerequisites, i.e., the agreement of all the parties to a new contract and the extinguishment of the original contractual obligation. Thus, it was incumbent on the division to decide whether Gulf Florida remained obligated to the sublessees, condominium unit owners, after the assignment to San Souci, and whether the *1121 sublessees consented to San Souci's being the new sublessor and obligor.[3]
The law in Florida is that novation is predicated upon consent. Prucha v. Guarantee Reserve Life Ins. Co., 358 So.2d 1155, 1157 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 459 (Fla. 1979); Tysen v. Somerville, 35 Fla. 219, 17 So. 567 (1895). Consent, however, need not be shown by express words, but may be implied from the circumstances of the transaction and by the conduct of the parties thereafter. Orlando Orange Groves Co. v. Hale, 119 Fla. 159, 161 So. 284 (1935); accord 58 Am.Jur.2d Novation § 16 (1971), and cases cited therein.
Yet, this is not to say that mere knowledge of the assignment by the obligee and acquiescence therein, alone, is sufficient to release the original obligor and create a novation. Thus, consent may not be implied where a policyholder, faced with the accomplished fact of the assignment of the policy by the insurance company, continues payment of insurance premiums to the assignee so as not to abandon his investment. Prucha v. Guarantee Reserve Life Ins. Co. Similarly, without more, consent may not be implied by the action of a lessee in making payment of the rent to the new lessor.
We acknowledge that San Souci I misstated the law in requiring, as an essential element of proof of a novation, that consent be expressly made. That suggestion of a more stringent rule, although incorrect, does not impinge on our ultimate holding.[4]
In the instant case the division implied the condominium unit owners' consent to accept San Souci as the new obligor, and the extinguishment of the prior obligation, from the following documentary evidence:[5] (1) the original lease from the Santa Rosa Island Authority allowing for assignment; (2) the assignment to San Souci without warranty of title; (3) the notice of assignment to the condominium unit owners; and (4) the condominium association minutes indicating that the unit owners had intended, themselves, to purchase the lease. We hold that these facts certainly do not show express consent, but neither do they show implied consent. They are wholly inadequate from which to conclude the original obligation was extinguished. In short, a novation has not been proven.
Consequently, as argued in San Souci's Point VI, absent a new contract effected by the June 2, 1977, assignment of the sublease, as the declaration of condominium and master sublease were filed over two years prior to the effective date of section 718.401(8), retroactive application of that statutory section unconstitutionally impairs the contractual obligations embodied in the master sublease. San Souci, 421 So.2d at 628. We therefore reverse the division's order and hold that section 718.401(8) is not applicable to San Souci's sublease in light of the present record. However, in view of our holding on Point II, the cause is again remanded to the division to hold an evidentiary hearing on the issue of novation should one be requested by either, or by both, San Souci or La Plaza Condominium Association, Inc.
REVERSED and REMANDED for proceedings consistent with this opinion.
THOMPSON and ZEHMER, JJ., concur.
NOTES
[1] Section 718.401(8), Florida Statutes (Supp. 1976), was enacted by Chapter 76-222, Laws of Florida, and states:

It is declared that the public policy of this state prohibits the inclusion or enforcement of escalation clauses in leases for recreational facilities, land, or other commonly used facilities serving condominiums, and such clauses are hereby declared void for public policy. For the purposes of this section, an escalation clause is any clause in a condominium lease which provides that the rental under the lease shall increase at the same percentage rate as any nationally recognized and conveniently available commodity or consumer price index.
[2] Section 120.565 states in relevant part:

Declaratory statement by agencies  Each agency shall provide by rule the procedure for the filing and prompt disposition of petitions for declaratory statements. A declaratory statement shall set out the agency's opinion as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his particular set of circumstances only... .
[3] The "obligation" owed by the sublessor would be, for example, to keep the sublessees in quiet possession of their land. San Souci, 421 So.2d at 631.
[4] Interestingly, the division chose not to follow the standard suggested by this Court in San Souci I, instead opting to utilize the traditional rule now enunciated. We are impressed by the division's perspicacity and courageous independence (or blatant insurrection), but hope to avoid such uncomfortable misunderstandings in the future.
[5] Documentary proof was required to satisfy the Statute of Frauds, as the alleged sublease novations involve terms in excess of one year. San Souci, 421 So.2d at 632.