521 So.2d 158 (1988)
BISHOP ASSOCIATES LIMITED PARTNERSHIP, Hall Cactustree Associates Limited Partnership, Hall Coraltree Associates Limited Partnership, Hall Juleptree Associates Limited Partnership, Hall Limetree Associates Limited Partnership, Hall Markettree Associates Limited Partnership, Hall Wheattree Associates Limited Partnership, Oakland Associates Limited Partnership, St. Clair Associates Limited Partnership, and Stratford Associates Limited Partnership, Joint Intervenors, Appellants,
v.
Arnold BELKIN, Petitioner, and State of Florida, Department of Business Regulation, Division of Florida Land Sales, Condominiums and Mobile Homes, Respondents, Appellees.
No. BP-270.
District Court of Appeal of Florida, First District.
February 4, 1988.
*159 Joseph D. Bolton and Anthony J. Olivia of Shutts & Bowen, Miami, and Linda McMullen of McFarlain, Bobo, Sternstein, Wiley & Cassedy, Tallahassee, for appellants.
Karl M. Scheuerman, Tallahassee, for appellees.
JOANOS, Judge.
This appeal is from an order in the nature of a declaratory statement of the Department of Business Regulation, State of Florida, Division of Florida Land Sales, Condominiums and Mobile Homes (Division). Appellants raise the following issues for our review: (1) Whether the Division's declaratory statement should be rejected because its interpretation of sections 718.103 and 718.301, Florida Statutes, yields an absurd result; (2) whether the Division's declaratory statement should be rejected because its interpretation of sections 718.103 and 718.301, Florida Statutes, violates the privileges and immunities clause of the United States Constitution; and, (3) whether the Division incorrectly overruled the legal conclusions of the hearing officer with respect to control of the condominium association. We affirm.
The condominium involved in this action is Winston Towers 600 Condominium, a residential condominium in Dade County, Florida. Between May 1983 and March 1984, appellants, ten limited partnerships (four from Texas and six from Michigan), each purchased a number of units in the condominium from Winston Capital, Inc., the original developer. The units purchased by the joint intervenors were not acquired for the purpose of occupancy by the joint intervenors. None of the joint intervenors have ever offered any of their units for sale. Further, the joint intervenors have not offered any of their units for lease in excess of five years. The units have instead been leased for shorter periods of time.
Appellants obtained control of the condominium association because they owned a number of units as a block, which constituted a controlling interest in the condominium association and allowed them to elect two of the three directors of the association. On August 13, 1984, appellee, Arnold Belkin (who is a unit owner) filed a petition for declaratory statement with the Division. Belkin requested the Division to issue a declaratory statement, 1) declaring the appellants (ten limited partnerships) to be developers within the definition of section 718.103(14), Florida Statutes (1985),[1] and 2) ordering appellants as developers to turn over control of the board of administration of the condominium association pursuant to section 718.301, Florida Statutes (1985).[2] A hearing was held by Division of *160 Administrative Hearings (DOAH) and the hearing officer entered a recommended order to which both parties filed exceptions.
The hearing officer found that a normal, regular and common activity of each of the ten limited partnerships is to offer to lease, and to enter into leases, all condominium units owned by the limited partnerships, in their ordinary course of business. Further, the ten limited partnerships have no business venture or income-producing activities other than attempting to lease their units. The hearing officer determined these entities were developers within the meaning of the definition provided by section 718.103(14), Florida Statutes, which defines developer as one who, inter alia, offers condominium parcels for lease in the ordinary course of business. Further, the hearing officer determined that the turn over of control of the condominium association from the original developer to the appellants, which occurred in 1984, was without legal effect. The hearing officer based his determination on the fact that the appellants and the original developer still own more than 50% of the units and the original developer still owns units for sale in the condominium. Also, the hearing officer concluded that, because the original developer still offered condominium units for sale, the turn over of the association from developer control was not required pursuant to section 718.301, Florida Statutes.
In its final order, the Division rejected these conclusions of law and ruled that the 1984 turn over of control pursuant to section 718.301 could be required regardless of whether the original developer still owned units for sale. Further, the Division concluded, pursuant to section 718.301(1) Florida Statutes, that appellants were not entitled to control since appellants were not offering units for sale in the ordinary course of business. The Division concluded that section 718.301 was designed to insure that unit owners, other than a developer, would ultimately be entitled to control their own affairs.
We affirm the findings of the Division in its final declaratory order. This case poses solely a question of the interpretation and application of section 718.301, Florida Statutes to the facts involved.
In interpreting and applying the definition of "developer" we find it significant that the statute defines developer as one who "creates a condominium or offers condominium parcels for sale or lease... ." Therefore the term developer is appropriately only applied to owners like appellants, who own more than one unit, and would *161 not apply to individuals who own one unit in which they live. In light of the wording of this statutory definition, we reject appellants' argument that the Division's interpretation of this definition will cause the absurd result of an owner or lessor losing his eligibility to vote for a majority of the board "regardless of whether he owns one unit or 500." Instead we agree with the Division's argument that the limited partnerships here are developers as defined in section 718.103(14), Florida Statutes. This conclusion, made by both the (DOAH) officer and the Division director, is supported by the record. A real estate expert, as well as two condominium association board members testified that the appellants operate the leasing of the units which they own, comprising over 60% of the entire condominium complex involved. Evidence revealed that the typical leases were for one year, (with possible extension to two years) and the intent of the appellants was to produce equity and gain on investment in real estate. Further, appellants have no other businesses. Also, Ms. Christine Erdody, a general partner in each of the limited partnerships, and one of the board members elected by the partnerships, testified that leasing the units, whether done through a management company as an agent, or by the developers, is an ordinary, common task involved in managing the condominium as a business.
The record also supports the Division's conclusion that the joint intervenors do not sell their units "in the ordinary course of business." See First Federal Savings and Loan Association of Seminole County v. Department of Business Regulation, Division of Florida Land Sales and Condominiums, 472 So.2d 494 (Fla. 5th DCA 1985), wherein the district court interpreted "ordinary" to mean "... regularly, normally or commonly offer condominium parcels for sale." 472 So.2d at 496. Further, another board of directors member, Mr. James Sherry, testified that all of the partners planned to sell their units "eventually" in order to recoup the equity accrued. Therefore, the joint intervenors are not developers in the regular business of selling their units. We agree with Division's argument that section 718.301(1)(c) and (d) Florida Statutes, clearly provides on its face that unit owners other than the developers are entitled to elect no less than the majority of the members of the board:
(c) When all of the units that will be operated ultimately by the association have been completed, some of them have been conveyed to purchasers, and none of the others are being offered for sale by the developer in the ordinary course of business; or
(d) When some of the units have been conveyed to purchasers and none of the others are being constructed or offered for sale by the developer in the ordinary course of business, whichever occurs first.
The ability to elect the majority of the board of directors substantially affects non-developer unit owners, as the Division director suggests in his final order. For example, until the non-developer unit owners control the association, the association may not institute, maintain, settle or appeal actions in its name on its behalf. See section 718.111(3), Florida Statutes.[3]
*162 Further, we agree with the Division that the Legislature's qualification of the term "developer," in section 718.502(1), Florida Statutes, with respect to filing documents with the Division, does not require, as appellants suggest, that the qualifier apply to all other provisions regarding developer in the statute. Had the legislature wanted to qualify developers by lease duration in section 718.301 Florida Statutes, it could have easily inserted the same terms it used in section 718.502(1). But no such language is present.
As to issue 2, regarding an alleged violation of the privileges and immunities clause, we find it significant that the statute does not distinguish between types of developers, i.e., non-resident versus resident. Therefore, we disagree with appellants' assertion that the Division's interpretation treats those who qualify as developers differently, based on their residency. Further, we agree with the Division's position that the joint intervenors, as limited partnerships, are not protected by the privileges and immunities clause. The record reveals that appellants were not formed legally into an association, and they did not have a contract requiring them to vote as a block. Therefore, appellants' "fusion of legal identity with its members" theory is also inapplicable here.
The privileges and immunities provisions of article IV, § 2, and of the fourteenth amendment of the United States Constitution, apply only to natural citizens. See 16A Am.Jur.2d § 719. Not only is a corporation excluded from the term "natural citizen," but an unincorporated association is excluded as well. W.C.M. Window Company, Inc. v. Bernardi, 730 F.2d 486, 493 (7th Cir.1984). Further, the statute speaks to all persons, as appellees contend and prohibits all "leasing developers" from controlling the association. In the order, the Division director explains that at some point the non-developer residents of the condominium are entitled to employ a management company of their own, and this assertion is supported by the statutory provisions which prohibit unit owners other than the developer from acting in a legal capacity until they gain control of the association.
Although the right to hold property is one of the privileges protected by the privileges and immunities clause, appellants have misconstrued the Division director's interpretation of the pertinent statutes, and therefore appellants have not established that the Division's interpretation places a "heavy burden on an out-of-state resident's ownership of condominium property in Florida." Appellants have not explained how the right to control the association impinges on their right to own units or be leasing developers, nor have they established the right to control the condominium association is a fundamental right. Further, appellants have not shown that the statute intentionally operates to the disadvantage of all non-residents while operating to the advantage of all residents.
Finally, a general review of Chapter 718 reveals that it was created to facilitate the transfer of control of the association from the developers to the non-developer unit owners. It was obvious that the legislature intended for the developers to relinquish control, although appellants, the evidence shows, as leasing developers, are trying to maintain control from out of state. Further, the record supports appellees' contention that given the facts of this case, the original developer and the joint intervenors have been acting independently, not interdependently. Therefore, according to appellants' suggested interpretation (as well as the hearing officer's recommended order), where "developer" includes original developer and transfer cannot occur if the original developer still owns units, transfer of control could never occur under sections 718.301(1)(a), (b), (c) and (d). Also, we note that in section 718.111(3) the statute provides that until the unit owners other than the developer obtain the control of the association, they cannot pursue *163 legal action against the developers for misrepresentations.
Further, we find that the Florida legislature built into the statute safeguards to protect the developer's interests in their investments even after transfer of control, contrary to appellants' argument. For those developers that are in the regular business of selling their units, and who still have units for sale, section 718.301(3)(b) Florida Statutes, provides that the association must obtain the developer's approval in writing before it can pursue an action that might be detrimental to the sales of the developer's units.
This court has previously stated its policy regarding agency statutory interpretation:
We are not concerned with whether the Department's implementing interpretation of the critical statutory term is the only one possible; nor are we concerned with whether, by our lights, that interpretation is the most desirable one given the statutory scheme as we perceive it. It is enough that the Department's implementing interpretation is a permissible one, sufficiently expounded by the Department's declaratory statement. (emphasis supplied).
Florida Power Corporation v. State, Department of Environmental Regulation, 431 So.2d 684, 685 (Fla. 1st DCA 1983). Also, we find persuasive Sans Souci v. Division of Florida Land Sales and Condominiums, 421 So.2d 623 (Fla. 1st DCA 1982), appeal after remand, 448 So.2d 1116 (Fla. 1st DCA 1984), as cited by appellee, wherein this court found that the Division had determined the applicability and interpretation to be placed upon another statute governing condominiums, and found the Division to have special expertise in making such determinations given its regulatory responsibility over condominiums. The court further opined that agency determinations concerning statutory construction will be given great deference, unless there is clear error or conflict with the intent of a statute. 421 So.2d at 626. See also Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla. 1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984).
We affirm the Division director's determination that in order to implement the legislative intent of section 718.301 entitled TRANSFER OF ASSOCIATION CONTROL, the word "developer" in this section should be interpreted to mean "subsequent developer", which accurately describes appellants. Therefore, even if the original developer still has units for sale, appellants' leasing arrangements will not act to prohibit transfer of control to the unit owners indefinitely, which is what would happen if the DOAH recommended order was affirmed, a result which, as the Division director states, is not contemplated by Chapter 718.
Applying the Division's interpretation of the pertinent statutes to the facts before us, we find no clear error or conflict with legislative intent, and therefore, affirm the Division's declaratory order.
SMITH, C.J., and WENTWORTH, J., concur.
NOTES
[1] In pertinent part Section 718.103(14) Florida Statutes (1985) provides:

(14) "Developer" means a person who creates a condominium or offers condominium parcels for sale or lease in the ordinary course of business, but does not include an owner or lessee of a condominium or cooperative unit who has acquired his unit for his own occupancy, nor does it include a cooperative association which creates a condominium by conversion or an existing residential cooperative after control of the association has been transferred to the unit owners if, following the conversion, the unit owners will be the same persons who were unit owners of the cooperative and no units are offered for sale or lease to the public as part of the plan of conversion. (emphasis supplied).
[2] In pertinent part Section 718.301 Florida Statutes (1985) provides:

718.301 Transfer of association control. 
(1) When unit owners other than the developer own 15 percent or more of the units in a condominium that will be operated ultimately by an association, the unit owners other than the developer shall be entitled to elect no less than one-third of the members of the board of administration of the association. Unit owners other than the developer are entitled to elect not less than a majority of the members of the board of administration of an association:
(a) Three years after 50 percent of the units that will be operated ultimately by the association have been conveyed to purchasers;
(b) Three months after 90 percent of the units that will be operated ultimately by the association have been conveyed to purchasers;
(c) When all the units that will be operated ultimately by the association have been completed, some of them have been conveyed to purchasers, and none of the others are being offered for sale by the developer in the ordinary course of business; or
(d) When some of the units have been conveyed to purchasers and none of the others are being constructed or offered for sale by the developer in the ordinary course of business, whichever occurs first. The developer is entitled to elect at least one member of the board of administration of an association as long as the developer holds for sale in the ordinary course of business at least 5 percent, in condominiums with fewer than 500 units, and 2 percent, in condominiums with more than 500 units, of the units in a condominium operated by the association.
(2) Within 60 days after the unit owners other than the developer are entitled to elect a member of members of the board of administration of an association, the association shall call, and give not less than 30 days' or more than 40 days' notice of, a meeting of the unit owners to elect the members of the board of administration. The meeting may be called and the notice given by any unit owner if the association fails to do so. Upon election of the first unit owner other than the developer to the board of administration, the developer shall forward to the division the name and mailing address of the unit owner board member.
(3) If a developer holds units for sale in the ordinary course of business, none of the following actions may be taken without approval in writing by the developer:
(a) Assessment of the developer as a unit owner for capital improvements.
(b) Any action by the association that would be detrimental to the sales of units by the developer. However, an increase in assessments for common expenses without discrimination against the developer shall not be deemed to be detrimental to the sales of units.
(4) Prior to, or not more than 60 days after, the time that unit owners other than the developer elect a majority of the members of the board of administration of an association, the developer shall relinquish control of the association, and the unit owners shall accept control. Simultaneously, the developer shall deliver to the association, at the developer's expense, all property of the unit owners and of the association which is held or controlled by the developer, including, but not limited to, the following items, if applicable, as to each condominium operated by the association: (emphasis supplied).
[3] In pertinent part Section 718.111(3) Florida Statutes (1985) provides:

(3) POWER TO MANAGE CONDOMINIUM PROPERTY AND TO CONTRACT, SUE, AND BE SUED  The association may contract, sue, or be sued with respect to the exercise or nonexercise of its powers. For these purposes, the powers of the association include, but are not limited to, the maintenance, management, and operation of the condominium property. After control of the association is obtained by unit owners other than the developer, the association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all unit owners concerning matters of common interest, including, but not limited to, the common elements; the roof and structural components of a building or other improvements; mechanical, electrical, and plumbing elements serving an improvement or a building; representations of the developer pertaining to any existing or proposed commonly used facilities; and protesting ad valorem taxes on commonly used facilities and on units. If the association has the authority to maintain a class action, the association may be joined in an action as representative of that class with reference to litigation and disputes involving the matters for which the association could bring a class action. Nothing herein limits any statutory or common-law right of any individual unit owner or class of unit owners to bring any action which may otherwise be available. (emphasis supplied).