568 So.2d 962 (1990)
FLORIDA INSURANCE GUARANTY ASSOCIATION, and Ray's Suprex, Inc., Appellants/Cross Appellees,
v.
Hollice C. RENFROE, Appellee/Cross-Appellant, and
Division of Workers' Compensation, Cross-Appellant.
No. 88-765.
District Court of Appeal of Florida, First District.
October 2, 1990.
Rehearing Denied October 31, 1990.
*963 Greg Johnson of Rumrell and Johnson, Jacksonville, and Marguerite H. Davis of Katz, Kutter, Haigler, Alderman, Eaton & Davis, Tallahassee, for appellants/cross appellees.
Thomas W. Davis of Barton, Davis & Fernandes, Gainesville, for appellee/cross-appellant.
Michael J. Rudicell, Dept. of Labor and Employment Sec., Tallahassee, for cross-appellant.
MINER, Judge.
This case involves an appeal by the employer/carrier (E/C) from a workers' compensation order awarding bad faith attorney's fees to claimant and a cross-appeal by claimant from that portion of the same order awarding a 5% permanent total disability (PTD) supplement but commencing payment of that supplement on January 1 of the year following claimant's reaching maximum medical improvement (MMI) and attaining PTD status.
With respect to the appeal, the E/C raise three issues. First, they argue that there is no competent substantial evidence which would support the Judge of Compensation Claims' (JCC's) award of bad faith attorney's fees under section 440.34(3)(b), Florida Statutes. Next, they maintain that the Florida Insurance Guaranty Association (FIGA) cannot be held liable for bad faith attorney's fees. Lastly, they assert that the JCC erred in computing the attorney's *964 fees awarded. Finding that the record contains competent substantial evidence to support the award of bad faith fees and that the JCC did not err in computing the amount of the award, we affirm as to those points without additional comment. We also affirm the remaining point on appeal but deem that further discussion of the issue is warranted.
FIGA argues that section 631.66, Florida Statutes (1987), precludes liability for bad faith attorney's fees because the association cannot be found liable for actions taken in the performance of its duties. We do not find this argument persuasive for, if such an interpretation were given, then FIGA would also be insulated from liability for other types of attorney's fees. Since such is not the case, we find FIGA's argument to be without merit.
FIGA next argues that section 631.57(1)(a)(3) and (1)(b), Florida Statutes (1987), shield it from liability in the premises. These subsections protect FIGA from liability beyond the policy limit and for penalties and interest. Thus, FIGA asserts, an award of bad faith attorney's fees amounts to an impermissible penalty outside the scope of the policy. It is well established, however, that an award of bad faith attorney's fees is not a penalty nor does it constitute a recovery for claimant that is over and above the amount necessary to compensate him for his loss. See Florida Erection Services v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981). Contrary to FIGA's position, we find Rivers v. S.C.A. Services of Florida, Inc., 488 So.2d 873 (Fla. 1st DCA 1986) to be inapposite. The holding in that case only states that in addition to reimbursing the claimant and his attorney, an award of bad faith fees serves to punish the carrier for ignoring the self-executing nature of Florida's Workers' Compensation Act. It cannot be said, however, that this recognition of the deterrent effect of a bad faith fee award amounts to a pronouncement that such an award is a penalty.
In Taylor v. Fulmer-Orlando, 528 So.2d 1224 (Fla. 1st DCA 1988), this court affirmed an award of bad faith attorney's fees against FIGA. Although we did not there address the arguments made by FIGA in the instant case, we find that those arguments are not so convincing as to merit a different result. Accordingly, we hold that a bad faith fee award is not a penalty within the meaning of Section 631.57.
Turning now to the cross-appeal, claimant and the Division urge that we not follow this court's stated rule as to the commencement of supplemental benefits expressed in Winter Garden Citrus v. Parrish, 438 So.2d 472 (Fla. 1st DCA 1983), arguing that that opinion was in error. In Winter Garden Citrus, the court found that the starting date for the payment of supplemental benefits would be January 1 of the year following the year in which the claimant is determined to be permanently and totally disabled (after reaching MMI). The Winter Garden Citrus opinion was erroneously reasoned, they maintain, because it misapplied Martino v. Nevins Fruit Company, IRC order 2-3775 (April 20, 1979). In Martino, the claimant was determined to be PTD the same year in which he was injured; thus supplemental benefits began running at PTD, but amounted to nothing because the calendar year had not elapsed since the injury.
For its part, the E/C argue generally that the rule of stare decisis requires that this court follow Winter Garden Citrus.
At the outset of our analysis, we acknowledge that the instant case is squarely within the language of Winter Garden Citrus, though we note that the question was posed as a collateral issue in that case and was not thoroughly explored.[1] Further reflection persuades us that Winter Garden Citrus was mistakenly reasoned *965 as to the proper commencement date for these benefits.
As noted previously, the Winter Garden Citrus court stated that payment of the 5% supplement provided for in section 440.15(1)(e)(1), Florida Statutes (1987), would begin on January 1 of the year following claimant's reaching PTD status. In Martino, the Industrial Relations Commission held that payment of the 5% supplement "should commence the first calendar year after the date of injury and attainment of maximum medical improvement." In Martino, the claimant reached MMI in the same year he had his industrial accident; in Winter Garden Citrus, however, claimant's injury occurred in the calendar year prior to the year in which MMI was reached. This distinction is significant when the statute is examined.
Section 440.15(1)(e)(1) states in pertinent part:
In case of permanent total disability ... the injured employee shall receive additional weekly compensation benefits equal to 5 percent of his weekly compensation rate ... multiplied by the number of calendar years since the date of injury.
This yields a formula: .05 X compensation rate X number of calendar years since injury = supplement. In Martino, or in any case where injury and MMI/PTD fall in the same calendar year, the amount of the supplement will equal zero until January 1 of the year following MMI/PTD. This is true because the multiplier "number of calendar years since injury" will be zero, yielding a product of zero. When, however, the injury occurs in a prior calendar year, the formula will produce a positive supplement beginning on the date of MMI/PTD. This would be the case in Winter Garden Citrus as well as the instant case. Thus, it is logical and within the plain meaning of the statute to begin payment upon reaching MMI/PTD when the date of injury is in some calendar year prior to the calendar year in which MMI/PTD is attained. The statute itself makes no mention of January 1. Moreover, January 1 is not a time relevant to the subject inquiry. Rather, it is claimant's attainment of PTD status that triggers the payment of the benefits. Significantly, our interpretation of the statute comports with that given by the Division of Workers' Compensation. This court has, in the past, accorded great deference to interpretations given by agencies that are charged with the administration of statutes. See Sans Souci v. Division of Florida Land Sales and Condominiums, 421 So.2d 623 (Fla. 1st DCA 1982). We note, parenthetically, that the panel in Winter Garden Citrus did not have the benefit, as we do, of an explanation of the Division's position.
In sum, as to the cross-appeal, we qualify the stated rule in Winter Garden Citrus to the extent that it does not accord with the reasoning expressed and the result we reach herein. We affirm all points raised on appeal, reverse the JCC's holding on the point raised on cross-appeal, and remand for further proceedings consistent with this opinion.
BOOTH and ZEHMER, JJ., concur.
NOTES
[1] The Winter Garden Citrus method of commencing supplemental benefits was followed in Grafton v. Sacred Heart Hospital, 504 So.2d 537, 539 n. 2 (Fla. 1st DCA 1987). The date of commencement, however, was not an issue in Grafton and the application of Winter Garden Citrus was only incidental to any holding in that case.