872 So.2d 356 (2004)
Clifford THOMPSON and Terri Thompson, Appellants,
v.
JARED KANE COMPANY, INC., Appellee.
Nos. 2D02-5821, 2D03-2011, 2D03-3594.
District Court of Appeal of Florida, Second District.
April 23, 2004.
*358 Jon D. Parrish of Parrish, White & Lawhon, P.A., Naples, for Appellants.
Fitzgerald A. Frater and Benjamin C. Iseman of Treiser, Collins & Vernon, Naples, for Appellee.
DAVIS, Judge.
In these consolidated appeals, Clifford and Terri Thompson appeal three final judgments entered by the trial court in favor of Jared Kane Company, Inc. ("JKC"). JKC sought foreclosure of a construction lien against the Thompsons' home after disputes arose during the home's construction. The claim of lien was filed pursuant to section 713.05, Florida Statutes (1997), which allows for the creation of a lien where the lienor is in privity with the owner. JKC's action to foreclose the lien alleged that the Thompsons had entered into a "construction agreement" with JKC. During the litigation, the Thompsons attempted to amend their answer and counterclaim to allege that they had not contracted with JKC but had contracted with another entity, Kane Communities, Ltd. ("KCL"). The trial court refused their request to amend, found that JKC had a valid lien against the home, and awarded JKC $178,208.05 in damages. The trial court also entered separate judgments against the Thompsons for attorney's fees and costs. We reverse all three judgments because we conclude that the trial court's refusal to allow the Thompsons to amend their answer and counterclaim was an abuse of discretion.
On July 3, 1999, the Thompsons entered into a written construction contract with KCL, a Florida limited partnership. Under the contract, KCL agreed to build a home for the Thompsons on the Thompsons' homesite. However, the contract included the following provision concerning what entity would actually perform the work:
Notwithstanding the foregoing, Owner [the Thompsons] acknowledges and agrees that Builder [KCL] will delegate all of its duties hereunder to Kane Development Corp. (or such other affiliate of Builder as Builder may elect upon written notice to Owner) ("General Contractor"). Accordingly, the obligations of Builder under this Agreement may be performed by General Contractor, and Owner shall accept such performance by General Contractor on behalf of Builder. Notwithstanding the foregoing, Owner and General Contractor shall be jointly and severally liable for all of Owner's obligations under this Agreement.
After entering into the contract, the Thompsons received a notice of commencement prepared by Kane Communities LP, a limited partnership, which is apparently not the same entity as KCL, given their different addresses and slightly different names. The notice of commencement listed *359 JKC, not KCL, as the contractor and gave the same address for JKC that appeared on the original construction contract for KCL. JKC maintains that its designation as the contractor on this notice of commencement is evidence of its claim that the Thompsons did in fact have a construction agreement with JKC.
To further confuse the matter, during the course of the construction, the Thompsons received written correspondence on the letterhead of Kane Custom Homes signed by "Leif E. Metsch, President." Kane Custom Homes was at that time an unregistered fictitious name, but it is not clear which entity (the partnership or the corporation) was doing business under this name. Subsequent to commencement of this litigation, the corporation registered the name Kane Custom Homes as its business name.
After disputes arose between the Thompsons and JKC, the Thompsons took possession of the nearly completed home without the permission of JKC and refused to pay the remainder of the contract price because of an alleged breach of the construction agreement by JKC. JKC recorded a construction lien against the property and filed an action to foreclose that lien. The complaint identified JKC as the plaintiff and alleged, in addition to the count for foreclosure, counts for breach of contract, unjust enrichment, and quantum meruit. The Thompsons timely filed an answer and counterclaim.
JKC maintains that the following allegation in its complaint, which the Thompsons admitted in their answer, demonstrates that the Thompsons agreed that they had entered into a new oral contract with JKC:
On or about July 3, 1999, Thompson executed a construction agreement with Kane Communities, Ltd., ... Thompson however, subsequently agreed that Kane would perform the work consistent with the terms and conditions of Exhibit A (the construction agreement) and in connection therewith, they executed the Notices [of] Commencement....
Throughout the remainder of the complaint, the plaintiff was simply identified as "Kane." In addition to the Thompsons' admission to the above paragraph, the Thompsons alleged the following in their counterclaim: "On or about July 3, 1999, the Owners and the Contractor entered into a construction agreement whereby Contractor was to construct a single family residence upon the above-referenced property." JKC argues that the Thompsons thus admitted to having contracted directly with JKC for the construction of their home.
However, during discovery, the Thompsons realized that JKC was relying on the Thompsons' admission to JKC's allegation and the above allegation in their counterclaim to establish that the Thompsons had entered into a new contract with JKC. Therefore, thirteen months after the complaint was filed, and about two months before trial was scheduled to begin, the Thompsons moved for permission to amend their answer and counterclaim so as to name KCL, not JKC, as the party with whom they had contracted. Although the Thompsons acknowledged that they had admitted JKC's allegation in their answer and repeated the error in their counterclaim, they asserted that their admission was due to mistake. They, accordingly, asked the trial court for permission to amend their answer to deny this allegation and to modify their counterclaim to allege the proper party with whom they had contracted, KCL.
Naming the proper party to the contract was critical to the construction lien litigation. If the contract was determined to be with KCL, then the failure to comply with certain notice requirements under the construction lien statute, chapter 713, Florida *360 Statutes (1997), would be fatal to JKC's lien foreclosure action. If, however, there was a new contract between the Thompsons and JKC, as JKC argued and the trial court apparently found, the notice requirements would not apply and JKC would prevail. Thus, the existence of this alleged new contract would have been the key legal issue in the lien litigation.
JKC objected to the Thompsons' request to amend their answer and counterclaim, arguing that its complaint was not vague or ambiguous, that the matter had been pending for more than a year and JKC would be prejudiced by this late amendment with trial scheduled to begin in two months, and that the amendment was futile. The trial court denied the Thompsons' motion to amend their answer and counterclaim without making any factual findings, and the matter proceeded to trial.
At the nonjury trial, JKC did not present any evidence to demonstrate that a new contract had been entered because the same was deemed to have been admitted by the pleadings. Although the Thompsons did put on evidence to contradict the existence of the alleged new contract, the trial court found for JKC. By denying the amendments, the trial court removed from trial any consideration of the Thompsons' argument that no new contract had been created between JKC and the Thompsons. This was an abuse of discretion.
The Florida Rules of Civil Procedure reflect a clear policy that, absent exceptional circumstances, requests for leave to amend pleadings should be granted. Craig v. E. Pacso Med. Ctr., Inc., 650 So.2d 179, 180 (Fla. 2d DCA 1995). Granting leave to amend rests within the discretion of the trial court; however, all doubts should be resolved in favor of allowing amendment. Adams v. Knabb Turpentine Co., 435 So.2d 944 (Fla. 1st DCA 1983). In fact, "refusal to allow amendment of a pleading constitutes an abuse of discretion unless it clearly appears that allowing the amendment would prejudice the opposing party; the privilege to amend has been abused; or amendment would be futile." Bill Williams Air Conditioning & Heating, Inc. v. Haymarket Coop. Bank, 592 So.2d 302, 305 (Fla. 1st DCA 1991) (citing New River Yachting Ctr., Inc. v. Bacchiocchi, 407 So.2d 607 (Fla. 4th DCA 1981)).
First, JKC's argument that it would be prejudiced by the amendment due to the close proximity of the trial date is without merit. In Florida Sunshine Coast Development Co. v. McClung, 352 So.2d 154 (Fla. 2d DCA 1977), this court found there was no prejudice where a party amended a mistaken admission after the plaintiff had rested its case. Granted, had the Thompsons been allowed to amend their answers and counterclaim, the theory and strategy of the case would have changed and rather than relying on the Thompsons' procedural admission, JKC would have had to actually prove that a new contract had been entered. However, requiring a plaintiff to prove its allegations is not prejudice to the plaintiff; it merely offers due process to the defendants. If, in fact, JKC could not complete its trial preparation in the two months remaining before trial, it would have been more appropriate for the matter to have been continued than to foreclose the Thompsons' right to litigate the issues critical to a proper disposition of the case.
Additionally, there is no suggestion in this record that the privilege to amend was abused here; this was the first request by either party to amend the pleadings.
Finally, JKC argues that the amendment would be futile. JKC insists that even if the existence of a new contract had become an issue, the fact that the Thompsons signed the notice of commencement, which listed JKC as the contractor, proved the existence of a new contract. We disagree.
*361 Even if the parties had entered into a new contract, it could not have been legally substituted for the old contract unless there had been a novation. "A novation is a mutual agreement between the parties for the discharge of a valid existing obligation by the substitution of a new valid obligation." Jakobi v. Kings Creek Vill. Townhouse Ass'n, 665 So.2d 325, 327 (Fla. 3d DCA 1995) (citing Ades v. Bank of Montreal, 542 So.2d 1013 (Fla. 3d DCA 1989)). To prove the substitution of the new contract for the old, four elements must be shown: (1) the existence of a previously valid contract; (2) the agreement of the parties to cancel the first contract; (3) the agreement of the parties that the second contract replace the first; and (4) the validity of the second contract. Id. Whether a novation takes place is dependent upon the intention of the parties. Pinnacle Holding, Inc. v. Biologics, Inc., 643 So.2d 642 (Fla. 2d DCA 1994). Consent of the parties to substitute the new contract for the old may be implied from the circumstances. Sans Souci v. Div. of Fla. Land Sales & Condos., 448 So.2d 1116 (Fla. 1st DCA 1984). "Yet, this is not to say that mere knowledge of the assignment by the obligee and acquiescence therein, alone, is sufficient to release the original obligor and create a novation." Id. at 1121.
JKC's complaint does not allege the above elements of a novation. The complaint, after alleging the existence of the original written contract, merely alleges that the parties agreed that JKC would "perform the work" in accordance with the terms of the written contract. Whether this amounted to an allegation that the parties consented to a new contract or an allegation that JKC agreed to perform the work pursuant to the delegation provision of the original contract is not clear. Similarly, it is not clear whether the Thompsons' signatures on the notice of commencement evidenced an intention to enter a new contract, was mere acquiescence to KCL's assignment of the contract to JKC, or was their acknowledgment that KCL, as the party to the contract, was delegating its responsibilities to the general contractor, JKC, as the contract specified it could do. Given the ambiguity of this allegation, we do not believe that the amendment would have been futile. If the Thompsons had been allowed, by amendment, to deny the existence of a contract with JKC, JKC would have been required to present sufficient evidence to prove that the parties intended to form a new contract. If JKC failed to present such evidence, the trial court would have had to conclude that JKC was not in privity of contract, the statutory lien requirements had not been met, the construction lien was invalid, and the foreclosure of the lien was improper.
Because the record reveals no prejudice to JKC, no abuse of the amendment privilege, and no evidence that the proposed amendment would be futile, we conclude that the trial court abused its discretion in denying the Thompsons' motion to amend the answer and counterclaim. We thus reverse the final judgment validating the lien and awarding damages. Additionally, we reverse the final judgments awarding attorney's fees and costs, as they were based on the final judgment foreclosing the lien. On remand, the trial court shall allow the Thompsons to amend their answer and counterclaim and the matter shall be set for trial on the amended pleadings.
Reversed and remanded.
ALTENBERND, C.J., and SILBERMAN, J., Concur.