901 So.2d 810 (2005)
Byron BRYANT, Appellant,
v.
STATE of Florida, Appellee.
Byron Bryant, Petitioner,
v.
James V. Crosby, Jr., Respondent.
Nos. SC03-1618, SC04-83.
Supreme Court of Florida.
April 28, 2005.
*815 Jo Ann Barone Kotzen, West Palm Beach, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, FL, for Appellee/Respondent.
PER CURIAM.
Byron Bryant appeals an order of the circuit court determining that it lacked jurisdiction to hear Bryant's claim and, in the alternative, denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. He also petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we hold that the circuit court did have jurisdiction to hear Bryant's claims because it should not have stricken his original motion, but should have instead granted leave to amend within a reasonable time. Nevertheless, we affirm the lower court's alternative denial of the motion on the merits. We also deny Bryant's petition for habeas corpus.

I. FACTS
The facts of this case are set out in Bryant's direct appeal.[1] We briefly restate them here. Byron Bryant and an accomplice entered Andre's Market in Delray Beach, Florida. The accomplice stayed at the front of the store near the register, while Bryant walked to the back of the store where he encountered Leonard Andre. Bryant asked Andre if he could use the Market's bathroom. As Andre turned to show Bryant the location of the facilities, Bryant pulled a .357 magnum revolver on Andre, while the accomplice drew his gun on Andre's wife. Upon seeing Bryant draw his weapon, Andre lunged at him and the two men began to struggle. Bryant eventually regained control of the gun and shot Andre three times, fatally wounding him. The two perpetrators then ran from the scene, dropping a ski mask in their haste.
*816 After fleeing the scene, Bryant told his girlfriend what had occurred and asked her to dispose of the gun. Investigation of the crime scene produced few leads. Bryant became a suspect only after several of his acquaintances contacted investigators about his involvement. Police eventually arrested him, and he gave police a recorded statement confessing to the robbery and murder. At trial, Bryant denied any involvement in the crimes and claimed that the confession was the result of police coercion. Bryant v. State, 785 So.2d 422, 426 (Fla.2001).
Bryant was convicted of murder and armed robbery and sentenced to death in 1993. This Court reversed Bryant's conviction because the trial judge was absent during a recitation of testimony without a valid waiver. Bryant v. State, 656 So.2d 426, 429 (Fla.1995). Bryant was retried and again found guilty by a jury. Bryant waived his penalty phase jury. He was sentenced to death by Judge Mounts, the same judge who presided at Bryant's first trial. The trial court found the following three aggravating factors: (1) Bryant previously had been convicted of a felony involving the use or threat of violence to the person, (2) the capital felony was committed while the defendant was engaged in the commission of or in an attempt to commit the crime of robbery, and (3) the crime was committed for the purpose of avoiding a lawful arrest or effecting an escape from custody. Bryant, 785 So.2d at 436-37. The court did not find any statutory mitigating factors but did find the single nonstatutory mitigator of remorse. Id. On direct appeal, Bryant raised seven issues.[2] We affirmed the conviction on all issues.
Bryant's conviction became final when the United States Supreme Court denied certiorari. Bryant v. Florida, 534 U.S. 1025, 122 S.Ct. 557, 151 L.Ed.2d 432 (2001). After this Court granted a thirty-day extension to the one-year time limit for filing postconviction motions, Bryant filed his initial postconviction motion on November 20, 2002. The circuit court struck the motion because it did not satisfy the pleading requirements of rule 3.851. The circuit court then allowed Bryant to file an "amended" motion, which he did in March 2003. In August, however, the circuit court determined that it lacked subject matter jurisdiction to hear Bryant's claims. Id. The court reasoned that the "amended" motion was really a new motion because the original motion had been stricken. Therefore, the court reasoned, the new motion was untimely filed. In the alternative, the circuit court made summary findings on the merits of the motion without holding an evidentiary hearing.

II. 3.851 APPEAL
Bryant's appeal concerns the circuit court's August 2003 order. He challenges the court's ruling that it lacked subject matter jurisdiction. He also challenges the court's alternative, summary findings as to several claims of ineffective assistance of counsel. Finally, he claims his death sentence is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. *817 2348, 147 L.Ed.2d 435 (2000). We address each of these arguments in turn.

A. Subject Matter Jurisdiction
The judgment and sentence on Bryant's second trial became final when the United States Supreme Court denied certiorari on November 13, 2001. Bryant, 534 U.S. 1025, 122 S.Ct. 557, 151 L.Ed.2d 432; see Fla. R.Crim. P. 3.851(d)(1)(B) (a judgment becomes final "on the disposition of the petition for writ of certiorari by the United States Supreme Court"). A postconviction motion must be filed within one year after the judgment of conviction and sentence of death becomes final, unless this Court grants an extension under rule 3.851(d)(5). Only we have the power to grant an extension. Id. We exercised that power on November 13, 2002, and granted Bryant a 30-day extension, to December 13.[3] Bryant timely filed his initial postconviction motion on November 20. The State moved to strike the motion, arguing that Bryant failed (1) to attach a copy of the judgment and sentence; (2) to plead his claims separately, detailing the facts; and (3) to justify raising issues in a collateral pleading which either were or could have been raised on direct appeal. The trial court struck Bryant's motion, ruling that it failed to meet the pleading requirements of rule 3.851(e)(1). The brief order merely states: "[A]nd having considered the written pleadings and oral argument of counsel it is hereby ORDERED AND ADJUDGED that the State's Motion to Strike Defendant's Initial Postconviction Motion is GRANTED." The record indicates that the State drafted this order.
Instead of seeking a further time extension from this Court, on January 16, 2003, Bryant moved the trial court for leave to amend the stricken motion.[4] The trial court granted the motion. At the hearing, the court cited concerns over further delays in the case and the likelihood that this Court would grant an extension in any event. Bryant filed his "amended" postconviction motion on March 4. On August 8, however, Judge Brown ruled that the trial court lacked subject matter jurisdiction to entertain Bryant's claims because the motion was not filed within the time allotted by rule 3.851(d).
We review discretionary acts by trial judges under an abuse of discretion standard: "If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." Canakaris v. Canakaris, 382 So.2d 1197, 1203 (1980); see Paranzino v. Barnett Bank of S. Fla., 690 So.2d 725, 729 (Fla. 4th DCA 1997) (citing Canakaris). A trial judge's decision to strike a motion is entitled to significant deference. Nevertheless, we conclude that the trial court abused its discretion in striking the initial motion without granting leave to amend.
In a civil context, striking pleadings and dismissing with prejudice are considered severe sanctions that require a strong justification. In Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983), this Court held:
We agree that the striking of pleadings... is the most severe of all sanctions which should be employed only in extreme circumstances. A deliberate and contumacious disregard of the court's authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to *818 an order of the court, or conduct which evinces deliberate callousness.
(Citations omitted.)
We understand that postconviction motions differ from civil complaints in significant respects. Postconviction motions cannot be "dismissed" as complaints can. Nevertheless, the same principles apply. Although a trial court may "strike" a postconviction motion where a civil complaint would be "dismissed," the trial court, like the court in the civil context, should grant leave to amend the motion to cure the defects that led the court to strike the original motion. In the civil context, dismissing a complaint without granting at least one opportunity to amend is considered an abuse of discretion unless the complaint is not amendable. See Sonny Boy, L.L.C. v. Asnani, 879 So.2d 25, 28-29 (Fla. 5th DCA 2004) (holding that refusal to allow amendment of a complaint is an abuse of discretion unless "it clearly appears that allowing the amendment would prejudice the opposing party; the privilege to amend has been abused; or amendment would be futile"); Thompson v. Jared Kane Co., 872 So.2d 356, 360 (Fla. 2d DCA 2004) (same); Cason v. Fla. Parole Comm'n, 819 So.2d 1012, 1013 (Fla. 1st DCA 2002) (same); Hayward & Assocs., Inc. v. Hoffman, 793 So.2d 89, 90 n. 3 (Fla. 2d DCA 2001) (stating that because the complaint in question was the first submitted by the plaintiff, "to enter a final order dismissing th[e] complaint with prejudice and without opportunity to amend would have been an abuse of discretion"); Nev. Interstate Props. Corp. v. City of West Palm Beach, 747 So.2d 447, 448 (Fla. 4th DCA 1999) (stating that it is an abuse of discretion to dismiss a complaint without leave to amend "without giving the party offering the defective pleading an opportunity to amend, unless it is apparent that the pleading cannot be amended so as to state a cause of action"); Imperatore v. NationsBank of Florida, 677 So.2d 933, 935 (Fla. 4th DCA 1996) (finding abuse of discretion where the trial court dismissed a complaint with prejudice without allowing the plaintiff to amend); Balcar v. Ramos, 595 So.2d 308, 308 (Fla. 4th DCA 1992) (stating same as Nev. Interstate Props. Corp.). Had the circuit court stricken the motion with leave to amend, the amended motion Bryant filed in March 2003 would have been timely because it would have related back to the original filing. See generally Fla. R. Civ. P. 1.190(c) ("When the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading, the amendment shall relate back to the date of the original pleading."). Therefore, although the trial court was justified in striking Bryant's initial motion because it did not comply with rule 3.851, it should have done so with leave to amend within a reasonable time.
Our holding that the trial court abused its discretion by striking the initial postconviction motion without leave to amend is not inconsistent with the goals of rule 3.851(d), which establishes time limitations for filing postconviction motions and provides this Court with the exclusive power to extend the time for filing. Before the adoption of the current rule 3.851, much delay resulted from the filing of "shell motions" for postconviction relief. These motions provided a skeletal claim for relief and were made in anticipation of filing a complete amended motion in the future. The "shell motion" was filed merely to comply with the filing deadline. See Howell v. State, 877 So.2d 697 (Fla.2004) ("shell motion" for postconviction relief filed prior to fully argued amended motion); Washington v. State, 835 So.2d 1083, 1085 (2002) ("shell motion" filed two years prior to amended motion); Finney v. State, 831 So.2d 651, 656 (Fla.2002) (same); Moore v. State, 820 So.2d 199, 206 (Fla.2002) ("shell *819 motion" filed three months prior to amended motion).
Our decision today should not be interpreted as encouraging or even condoning the continued use of "shell motions." Bryant's initial postconviction motion was sixty-nine pages long. It was stricken for mostly technical deficiencies in form.[5] Such a lengthy motion can hardly be characterized as a "shell motion." Furthermore, the stricken motion was Bryant's first attempt at filing under rule 3.851. While defendants should not be given an unlimited opportunity to amend, due process demands that some reasonable opportunity be given to defendants who make good faith efforts to file their claims in a timely manner and whose failure to comply with the rule is more a matter of form than substance.
In the civil context, courts customarily grant anywhere from ten to thirty days to amend a complaint that does not state a cause of action. See Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993) (noting that the plaintiff was granted twenty days to amend the complaint); Rogers v. First Nat'l Bank at Winter Park, 232 So.2d 377, 377 (Fla.1970) (noting that the trial court granted plaintiff twenty days to amend the complaint); Rohlwing v. Myakka River Real Props., Inc., 884 So.2d 402, 405 (Fla. 2d DCA 2004) (citing Kozel); Town of Manalapan v. Fla. Power & Light Co., 815 So.2d 670, 671 (Fla. 4th DCA 2002) (noting that the trial court granted plaintiff thirty days to amend his complaint); Jennings v. Montenegro, 792 So.2d 1258, 1260 (Fla. 4th DCA 2001) (noting that the trial court granted plaintiffs an initial ten days to amend their complaint and fourteen days for a further amendment); Kapley v. Borchers, 714 So.2d 1217, 1218 (Fla. 2d DCA 1998) (noting that the trial court granted plaintiff twenty days to amend the complaint); Haas v. Roe, 704 So.2d 1117, 1117 (Fla. 2d DCA 1998) (noting that the trial court granted plaintiff thirty days to amend the complaint); Warren v. Shands Teaching Hosp. & Clinics, Inc., 700 So.2d 702, 703 (Fla. 1st DCA 1997) (noting that the trial court granted plaintiff ten days to amend the complaint); Freeman v. Mintz, 523 So.2d 606, 608 (Fla. 3d DCA 1988) (noting that the trial court granted plaintiff twenty days to amend the complaint); Mussler v. Computer Leasing of Fla., Inc., 511 So.2d 1124, 1124-25 (Fla. 4th DCA 1987) (noting that trial court granted plaintiff ten days to amend the complaint). Extending the same courtesy to defendants filing postconviction motions will not unduly delay the proceedings. Therefore, we hold that when a defendant's initial postconviction motion fails to comply with the requirements of rule 3.851, the proper procedure is to strike the motion with leave to amend within a reasonable period. Normally that will be between ten and thirty days, although special circumstances may dictate an extension greater than thirty days. The striking of further amendments is subject to an abuse of discretion standard that depends on the circumstances of each case. Again, we stress that we do not intend to authorize "shell motions"  those that contain sparse facts and argument and are filed merely to comply with the deadlines, with the intent of filing an amended, more substantive, motion at a later date.

B. Ineffective Assistance of Counsel
Bryant raises five claims of ineffective assistance of counsel. Only two claims require discussion: (1) counsel's *820 failure to preserve the shackling issue for appeal, and (2) counsel's failure to move to suppress Bryant's confession.[6] Claims of ineffective assistance of counsel are judged under the standard set by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Id. at 687. To establish ineffective assistance of counsel, both components must be satisfied. Id. Judicial scrutiny in these cases must be "highly deferential" and "every effort ... made to eliminate the distorting effects of hindsight." Id. at 689. Counsel's actions are to be judged under a standard of "reasonableness under prevailing professional norms." Id. at 688.
We hold that none of Bryant's ineffective assistance of trial counsel claims satisfies Strickland.

1. The Shackling Issue
Bryant claims that he was improperly shackled during his trial and that trial counsel failed to object and preserve this issue for appeal. Specifically, Bryant claims that counsel failed to (1) dispute the bad acts upon which the decision to shackle was based; (2) submit evidence or witness statements supporting Bryant's current appropriate behavior; and (3) argue for less restrictive and prejudicial methods of restraint. Bryant's claims are procedurally barred because they were preserved for appeal and argued before this Court on direct appeal. On direct appeal, we stated the facts relative to the shackling issue:
Prior to trial, the court ordered that Bryant be restrained, based principally upon Bryant's actions after his first trial where, upon hearing the verdict, he threw a chair in the direction of the prosecutor and jury, struggled with bailiffs, and shouted profanities while having to be forcibly restrained. The court offered Bryant the opportunity to wear an electronic belt which could be concealed underneath Bryant's clothing, in lieu of visible leg and waist restraints. Although Bryant objected to wearing any kind of restraints, he did initially agree to wear the electronic belt. On the day of the trial, however, Bryant refused to wear the electronic belt and requested not to be present if he was to be restrained. After a brief absence *821 from the courtroom, Bryant requested that he be allowed back into the trial and, although he again objected to the use of any restraints, agreed to wear the leg and waist restraintswhich he did for the remainder of the trial.
Bryant, 785 So.2d at 429. Bryant argued before this Court that an evidentiary hearing should have been held on the issue of whether restraints were necessary. We agreed. Id. at 429. We also held, however, that any error was harmless. Id. Judge Mounts, who presided over both trials, "personally witnessed Bryant throw a twenty-six pound chair twelve feet through the air in the direction of the prosecutor and jury" at the first trial and, therefore, had firsthand knowledge of "Bryant's incidents of inappropriate and dangerous courtroom behavior." Id. at 429-30. We concluded that under these circumstances any error in not holding an evidentiary hearing was harmless. Id. at 430.
The trial court allowed Bryant to wear a concealed electronic belt instead of visible shackles, and trial counsel objected when Bryant was forced to wear restraints. Id. at 429. Because Judge Mounts had previously witnessed Bryant's violent behavior in the courtroom, trial counsel cannot be faulted for failing to obtain a favorable ruling on the need for some type of restraint. Moreover, because Bryant refused to wear the concealed restraining belt, counsel cannot be faulted for Bryant's appearance before the jury in shackles. The issue was presented on the merits to the trial court and on direct appeal before this Court and is therefore procedurally barred.

2. Bryant's Confession
Bryant claims that trial counsel was ineffective in several respects in addressing Bryant's confession. According to Bryant, his counsel failed to (1) preserve for appellate review the issue of the suppression of Bryant's confession, (2) present a false confession expert at the suppression hearing, or (3) present witnesses such as Bryant's family who saw him at the police station before his confession. Bryant argues that a false confession expert would have testified that Bryant's confession was typical of those that are false. His family members, Bryant contends, could have testified as to Bryant's state of mind immediately before his confession was made. All three claims fail.
The circuit court was correct in ruling that Bryant's claim that trial counsel was ineffective for failing to preserve this issue for appeal was procedurally barred. The record shows that trial counsel moved to suppress Bryant's statements based on arguments that they were coerced, that Bryant was not fully advised of his rights, and that he was threatened with violence by the interrogating officers. Because this claim could have been raised on direct appeal but was not, it is now procedurally barred.
Bryant next claims that trial counsel was ineffective for failing to obtain a false confession expert. This claim is legally insufficient. We recently held that when a defendant alleges ineffective assistance of counsel for failure to call specific witnesses, a defendant is "required to allege what testimony defense counsel could have elicited from witnesses and how defense counsel's failure to call, interview, or present the witnesses who would have testified prejudiced the case." Nelson v. State, 875 So.2d 579, 583 (Fla.2004). Neither in his pleadings below nor in his brief before this Court does Bryant allege specific facts about which a confession expert would testify. He has not provided proposed testimony and does not even claim to have obtained an expert. Bryant merely concludes that an expert could testify that "[Bryant's] confession is typical of *822 those which are false." Without more specific factual allegations, such as proposed testimony, this claim is insufficient under Nelson.
The claim that trial counsel should have called Bryant's family members who saw him just before he was interrogated by police is similarly insufficient. Nowhere does Bryant describe the substance of any proposed familial testimony. Furthermore, this specific claim has not been preserved for review. In order to preserve an issue for appeal, the issue "must be presented to the lower court and the specific legal argument or grounds to be argued on appeal must be part of that presentation." Archer v. State, 613 So.2d 446, 448 (Fla.1993) (quoting Tillman v. State, 471 So.2d 32, 35 (Fla.1985)). This issue was not argued in the postconviction motion before the circuit court and was, therefore, not preserved for appeal.
Bryant also claims that trial counsel's "unreasonable failure to present petitioner's only defense[that his confession was false]to the jury rendered his trial fundamentally unfair." Like the issue of familial testimony, this claim has not been preserved for review. The claim was not raised in Bryant's postconviction motion and is therefore unpreserved.

C. Bryant's Claim that his Death Sentence is Unconstitutional under Ring v. Arizona and Apprendi v. New Jersey

Bryant claims that his sentence and conviction are unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which held Arizona's death sentencing scheme unconstitutional because it required the judge, sitting alone, to find aggravating factors necessary for the imposition of the death penalty. Bryant argues that the finding of aggravators in Florida increases the maximum penalty from life imprisonment to death in murder cases. Under Ring, he concludes, a jury and not a judge must make these findings beyond a reasonable doubt and, therefore, he is entitled to a new penalty phase where a jury determines whether aggravators exist.
The trial court ruled that Bryant's claim is legally insufficient because he waived his penalty phase jury. We agree. In Lynch v. State, 841 So.2d 362 (Fla. 2003), this Court faced a challenge to Florida's death sentencing statute based on Ring by a defendant who had voluntarily waived his penalty phase jury. We held:
Because appellant requested and was granted a penalty phase conducted without a jury, he has not and cannot present a claim attacking the constitutionality of Florida's death penalty scheme under the United States Supreme Court's recent holding in Ring.

Id. at 366 n. 1; see also Blakely v. Washington, 542 U.S. 296, ___, 124 S.Ct. 2531, 2541, 159 L.Ed.2d 403 (2004) (holding that Apprendi rights can be waived).
As long as Bryant's waiver of his penalty phase jury was "knowing, intelligent, and voluntary," he cannot challenge the validity of Florida's death sentencing scheme under Ring. See Tucker v. State, 559 So.2d 218, 219 (Fla.1990) (describing standard for voluntary waiver of a jury trial and citing Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). Bryant's waiver of his penalty phase jury was sufficient to satisfy this standard. After defense lawyers announced that Bryant intended to waive his penalty phase jury, the trial judge held a colloquy with Bryant in which he explained what this waiver meant and confirmed that it was Bryant's knowing intention to waive his penalty phase jury. In Guzman v. State, 721 So.2d 1155, 1158 (Fla.1998), we held a waiver valid where the trial judge and defense counsel questioned defendant in open court as to his decision. In a later *823 appearance before this Court, Guzman once again challenged his jury trial waiver on the grounds that Ring and Apprendi were decided in the interim and that he was not informed of their effect when he made his waiver. Guzman v. State, 868 So.2d 498, 511 (Fla.2003). This Court held that "because Ring and Apprendi did not invalidate any aspect of Florida's death sentencing scheme," Guzman's claim lacked merit. Id. ("Ring did not expand Guzman's jury rights beyond what he knew when he waived those rights.").
Furthermore, one of the three aggravators the trial court found in imposing the death penalty was that Bryant had committed a prior violent felony. Bryant, 785 So.2d at 436. This Court consistently has held that Ring does not apply when the prior violent felony aggravator is found. Robinson v. State, 865 So.2d 1259, 1265 (Fla.2004) ("This Court has held that the aggravators of murder committed `during the course of a felony' and prior violent felony involve facts that were already submitted to a jury during trial and, hence, are in compliance with Ring."); Hamilton v. State, 875 So.2d 586, 594 (Fla.2004) (prior violent felony aggravator "need not be found by the jury"); Johnston v. State, 863 So.2d 271, 286 (Fla.2003) (The "prior violent felony conviction alone satisfies constitutional mandates because the conviction was heard by a jury and determined beyond a reasonable doubt."). Bryant has previously been convicted of "sexual battery, grand theft, robbery with a weapon, and aggravated assault." Bryant, 785 So.2d at 436 n. 12. Because the prior violent felony aggravator was found, Bryant's Ring claim must fail.
Finally, we now have held that Ring does not apply retroactively in Florida. See Johnson v. State, No. SC03-1042, 904 So.2d 400, 2005 WL 977017 (Fla. Apr. 28, 2005). Bryant's death sentence became final when the United States Supreme Court denied certiorari on November 13, 2001. Bryant v. Florida, 534 U.S. 1025, 122 S.Ct. 557, 151 L.Ed.2d 432 (2001). Ring was not decided by the Supreme Court until June 24, 2002. Therefore, Bryant cannot assert a claim under Ring.

III. BRYANT'S HABEAS CORPUS PETITION
In his petition for habeas corpus, Bryant argues that appellate counsel was ineffective for (1) failing to challenge the denial of trial counsel's attempt to suppress Bryant's confession at trial, and (2) failing to challenge the "avoid arrest" aggravator. Bryant also reargues the Ring arguments made in his 3.851 motion.[7] We find no merit in Bryant's claims.
The standard for judging claims of ineffective assistance of appellate counsel parallels the standard for ineffective assistance of trial counsel set out in Strickland, 466 U.S. at 668, 104 S.Ct. 2052. Rutherford v. Moore, 774 So.2d 637 (Fla. 2000). This Court has stated:
[T]his Court's ability to grant habeas relief on the basis of appellate counsel's ineffectiveness is limited to those situations where the petitioner establishes first, that appellate counsel's performance was deficient because "the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance" and second, that the petitioner was prejudiced because appellate *824 counsel's deficiency "compromised the appellate process to such a degree as to undermine confidence in the correctness of the result."
Id. at 643 (second and third alterations in original) (quoting Thompson v. State, 759 So.2d 650, 660 (Fla.2000)). A defendant alleging ineffective assistance must allege "a specific, serious omission or overt act" by counsel that prejudiced him. Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). Also, appellate counsel is not required to raise all possible claims. Id. (noting that "from a tactical standpoint it is more advantageous to raise only the strongest points on appeal and that the assertion of every conceivable argument often has the effect of diluting the impact of the stronger points") (quoting Atkins v. Dugger, 541 So.2d 1165, 1167 (Fla.1989)). To succeed in his habeas petition, Bryant must demonstrate that appellate counsel committed serious errors in his representation and that those errors prejudiced his defense.

A. Bryant's Confession
Bryant asserts three claims of ineffective assistance of appellate counsel related to his confession: (1) failing to challenge the trial court's denial of the motion to suppress his confession; (2) failing to argue on appeal that Bryant's confession was given in exchange for a promise that he would be allowed to see his mother; and (3) failing to challenge his confession on the grounds that it was obtained through threats of violence. We address each in turn.

1. Failing to Challenge the Trial Court's Denial of the Motion to Suppress the Confession
Bryant claims that appellate counsel was ineffective for failing to challenge the trial court's denial of Bryant's motion to suppress his confession. Bryant argues that counsel should have argued that the confession was obtained pursuant to an arrest for which there was no probable cause. We conclude that the police had probable cause to arrest him.
Police arrested Bryant pursuant to statements given by four individuals: Mary Williams, Betty Bueie, Tara Bueie, and Damien Remy. On January 16, 1992, Betty Bueie contacted Detective Hartman, the lead investigating officer in the case. Mary Williams accompanied her to the police station. Betty and Williams spoke to Hartman in person and each told him in separate taped statements that they had heard Bryant say he had committed the murder. Betty said that she was upset because Bryant, who was dating Betty's sister Tara Bueie, had beaten Tara earlier that day and that Betty wanted to tell the police what she knew about the homicide. According to Hartman's testimony, Betty said that "Bryant had told her ... about the homicide, that he shot and killed the man in a robbery attempt, that he didn't mean to shoot and kill him but it happened." Both women also indicated that the gun Bryant used belonged to Cheryl Evans, another of his girlfriends, and that the gun was given back to her and that she had in turn given it to a man known to them as "Big D" who, at the time these statements were given, was incarcerated on narcotics charges.
After taking these statements, Hartman went to Bethesda Memorial Hospital to question Tara. Tara told him she had found out about the crime through Evans and that when she confronted Bryant, he had told her essentially the same story that Betty and Williams had told him. Hartman also indicated that he believed all three women mentioned a ski mask. A ski mask was found at the crime scene.
The police were able to ascertain the identity of "Big D" as a man named Damien Remy. He was being held in Martin County Jail under federal narcotics charges. The police then interviewed *825 Remy and obtained a taped statement from him. Remy had been dating Evans and had recently found out that Evans was also dating Bryant, whom Remy thought was Evans's cousin. Remy said that Evans had told him about how Bryant had confessed to her about committing the crime. Evans also told Remy that it was her gun that was used in the robbery attempt and murder. Soon after this conversation between Remy and Evans, Remy discovered Evans's gun on the floorboard of his car and threw it out the window while driving on the highway.
In addition to these statements, police had certain knowledge about the crime from investigation of the crime scene and interviews of witnesses. The deceased's wife witnessed the shooting and told police the assailant was a black male. An autopsy indicated that the victim was killed by gunshot wounds, and the lack of shell casings at the scene indicated the murder weapon was a revolver. Based on this information and the statements of Betty, Tara, Williams, and Remy, the police determined that they had probable cause to arrest Bryant.
On January 19, 1992, Evans arrived at the police station on an unrelated matter. Hartman noticed that she was the passenger of the vehicle and asked her who was driving. She replied it was Bryant. Hartman, with the assistance of other officers, approached the car and arrested him.
Bryant argues that Betty, Tara, Williams, and Remy should be considered anonymous informants and that their statements needed independent verification to establish probable cause. See Cunningham v. State, 591 So.2d 1058, 1060 (Fla. 2d DCA 1991) (holding that an anonymous tip cannot be used to effectuate an arrest unless the officer develops independent evidence of criminal activity). Cunningham, however, deals with a truly anonymous informant.[8] Police officers personally interviewed all four persons who gave information against Bryant. Each has been identified by name and none has tried to hide his or her identity. It is difficult to conceive how Remy could be anonymous when he was in jail when his statement was taken. See State v. Evans, 692 So.2d 216, 218 (Fla. 4th DCA 1997) (where a restaurant employee called 911, identified herself, and said she thought one of the restaurant's patrons was drunk in the drive-thru line, the court noted that "it is difficult to see how [the employee] can be deemed an `anonymous' caller: she provided her name, location, and occupation to the police").
The informants in this case are much closer to the definition of citizen-informants "whose information is at the high end of the tip-reliability scale ... [and is] `motivated not by pecuniary gain, but by the desire to further justice.'" Evans, 692 So.2d at 219 (quoting State v. Talbott, 425 So.2d 600, 602 n. 1 (Fla. 4th DCA 1982)). Although any one of the four informants may have had personal reasons to denounce Bryant, none came forward for pecuniary gain. Betty and Williams voluntarily approached the police with the stated intent of aiding the police investigation, and Tara and Remy also gave their statements voluntarily. Because all four informants were identified and gave their statements without the desire for pecuniary gain, they are citizen-informants whose statements can be relied upon by police when deciding if probable cause exists. See Kearse v. State, 662 So.2d 677, 684 (Fla.1995) (probable cause found where police had independent information *826 coupled with citizens' statements at the arrest site); Krawczuk v. State, 634 So.2d 1070, 1071-73 (Fla.1994) (probable cause found where witness informed police that he may have purchased stolen items from defendant). That the informants in Bryant's case did not witness the crime and were not victims does not render their statements irrelevant or unreliable.
We have previously explained the standard for probable cause:
Probable cause for arrest exists where an officer "has reasonable grounds to believe that the suspect has committed a felony. The standard of conclusiveness and probability is less than that required to support a conviction." Blanco v. State, 452 So.2d 520, 523 (Fla.1984). The question of probable cause is viewed from the perspective of a police officer with specialized training and takes into account the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Schmitt v. State, 563 So.2d 1095, 1098 (Fla. 4th DCA 1990).
Walker v. State, 707 So.2d 300, 312 (Fla. 1998). In Bryant's case, four separate identified persons gave recorded statements indicating that Bryant was involved in the homicide. Each also provided similar details, such as the existence of a ski mask and the nature of the weapon used in the crime. The police also had an ongoing investigation of the crime which gave them independent knowledge with which to verify some of the statements made by the informants, such as the type of weapon used and the existence of a ski mask. These facts indicate that the police had the requisite "reasonable grounds to believe that the suspect has committed a felony" when they arrested Bryant. Id.
Bryant claims that police should have obtained search warrants for Bryant's home, initiated wiretaps, and employed other investigatory measures to gather more evidence on Bryant before making an arrest. However, the standard for probable cause is not proof beyond a reasonable doubt but "reasonable grounds to believe that the suspect has committed a felony." Walker, 707 So.2d at 312. Based on the statements of Betty, Tara, Williams, and Remy and the information the police already had through their investigation of the crime, police had sufficient probable cause to arrest Bryant. Counsel was not ineffective for failing to challenge the trial court's denial of the motion to suppress his confession based on an unlawful arrest effectuated without probable cause.

2. Promise to See Bryant's Mother
Bryant also claims that appellate counsel was ineffective for failing to argue on appeal that Bryant's confession was given in exchange for a promise that he would be allowed to see his mother. Bryant cannot show prejudice on this issue because the trial court properly denied the claim. Appellate counsel is under no duty to assert a meritless claim. See Freeman v. State, 761 So.2d 1055, 1070 (Fla.2000) ("Appellate counsel cannot be ineffective for failing to raise an issue which is without merit.").
Although Bryant claims that he confessed in exchange for the promise of seeing his mother, he cites nothing in the record except the following excerpt from the testimony of Sergeant Robert Brand:
[Brand]: After his rights were read to him, Mr. Bryant denied the allegation because we told him he was under arrest for murder and robbery. He denied it. We then confronted him with a statement that we have from one of our witnesses.... He requested to listen to a portion of the taped statement that we had mentioned to him, which we honored that request. We went in and played it for him. That at that point basically he paused for a second, he *827 turned around and looked at me, he said, so do you think I did it? Said yes. He then asked Detective Hartman, he said, Craig, do you think I did it? He said, yes. He then said that he would go ahead and tell us, actually give us a statement but he wanted to talk to his mother first.
[Attorney for State]: Did he condition the giving of a statement upon seeing his parents, seeing his mother?
[Brand]: No. He said he would go ahead and tell us, go ahead and give us a statement but he wanted to talk to his mother. I went ahead and honored that request.
Hartman recalled the same moment as follows: "[Bryant] was quiet for maybe a minute or so, in thatsomewhere in that area, and then said to us, I want to see my mom and then I will tell you exactly what happened."
Based on this testimony, the trial judge found that there was no promise in exchange for a confession and that allowing Bryant to see his family was "an accommodation and an act of courtesy and kindness on the part of the police." Nothing in the record contradicts this conclusion. The police never demanded a statement in exchange for Bryant seeing his family. Bryant himself is the one who requested that his mother be brought in to see him. See Anderson v. State, 863 So.2d 169, 183 (Fla.2003) (rejecting a similar claim where the police agreed to a request to call the defendant's mother, but the police action "could not have given [defendant] the impression that the opportunity to contact his mother was contingent on providing statements").
There is further support in the record that Bryant's statement was voluntary and not made in exchange for any promise. In his taped statement, Bryant stated, "Yeah, I had a right not to say nothing but what, the speechthe testimony I give was of my own free will, it wasn't no promises or nothing like that." The interrogating officer then asked point blank, "We didn't promise you anything?" Bryant responded "No."
This Court has stated the standard for a voluntary confession: "It is well established that a confession cannot be obtained through direct or implied promises. In order for a confession to be voluntary, the totality of the circumstances must indicate that such confession is the result of a free and rational choice." Johnson v. State, 696 So.2d 326, 329 (Fla.1997). The totality of the circumstances in this case demonstrates that Bryant's confession was not made in exchange for a promise to see his mother. Because the trial court's decision was correct, Bryant cannot show that appellate counsel was ineffective in failing to present this claim on appeal.

3. Bryant's Claim that the Confession was Obtained through Threats of Violence
Finally, Bryant makes a cursory claim that appellate counsel was ineffective for failing to challenge his confession on the grounds that it was obtained through threats of violence. This claim is insufficiently pled. The entire argument on this issue is contained in the phrase "illegal coercion by police" in the opening paragraph of Bryant's argument and in a brief paragraph stating that two police officers had guns in their possession while in the interrogation room and that Bryant had at an earlier time alleged that one of the officers put a gun to Bryant's head during interrogation. Such a cursory argument is insufficient to preserve the issue for consideration. Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below *828 without further elucidation does not suffice to preserve issues ..."). This issue is deemed waived.

B. The "Avoid Arrest" Aggravator
Bryant's final claim in his petition for habeas corpus is that appellate counsel failed to challenge the trial court's use of the "avoid arrest" aggravator in imposing the death penalty. The trial court ruled that Bryant was attempting to avoid a lawful citizen's arrest and was therefore avoiding arrest under the plain meaning of the statute. Bryant claims that this was error and that appellate counsel should have challenged this ruling on direct appeal. To succeed on an ineffective assistance of appellate counsel claim, Bryant must show both substantial errors by appellate counsel and prejudice to his defense. Rutherford, 774 So.2d at 643.
Section 921.141(5)(e), Florida Statutes (1997), provides for the aggravating factor of avoiding arrest when a capital felony is "committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody." Bryant urges that the avoid arrest aggravator is meant to apply only when the victim was a police officer or when the murder was committed to eliminate a witness. See Urbin v. State, 714 So.2d 411, 415-16 (Fla.1998) (holding that to establish the "avoid arrest" aggravator witness elimination must be the dominant motive behind the killing); Consalvo v. State, 697 So.2d 805, 819 (Fla.1996) ("Typically, th[e] [avoid arrest] aggravator is applied to the murder of law enforcement personnel. However [it] has been applied to the murder of a witness to a crime as well."). The trial court reasoned that under the plain meaning of the statute, a "lawful arrest" could mean any legal arrest including a citizen's arrest.
We find the facts in this case insufficient to support the avoid arrest aggravator. The facts show nothing more than a murder after a struggle over a gun during a store robbery. We have held this aggravator invalid under similar circumstances. See Urbin, 714 So.2d at 416 (striking the avoid arrest aggravator where the defendant shot and killed a victim who resisted a robbery attempt).
Although we agree that the avoid arrest aggravator does not apply, however, we nevertheless deny this claim because Bryant fails to demonstrate prejudice. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052 ("[T]he defendant must show that the deficient performance prejudiced the defense"). We conclude that even without the "avoid arrest" aggravator, the trial court would have found that the aggravators outweighed the mitigators and imposed a sentence of death. Cf. Geralds v. State, 674 So.2d 96, 104 (Fla.1996) (concluding that even without an invalid aggravating circumstance, "the trial court still would have found that the aggravating factors present here substantially outweighed the mitigating evidence"). See generally Hill v. State, 643 So.2d 1071, 1074 (Fla.1994) (holding that in undertaking a harmless error analysis after striking an aggravator, the Court must determine whether a reasonable possibility exists that the evidence in mitigation is sufficient to outweigh the remaining aggravating circumstances). Further, the death sentence imposed on Bryant would still be proportional. Bryant, 785 So.2d at 436 ("In deciding whether death is a proportionate penalty ... this Court reviews and considers all the circumstances in a case relative to other capital cases."); Johnson v. State, 720 So.2d 232, 238 (Fla. 1998) ("In deciding whether death is a proportionate penalty, we must consider the totality of the circumstances of the case and compare the case with other capital cases.").
*829 In sentencing Bryant to death, the trial court found three aggravators: "(1) the defendant was previously convicted of a felony involving the use or threat of violence to the person, (2) the capital felony was committed while the defendant was engaged in the commission of or in an attempt to commit the crime of robbery, and (3) the crime was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody." 785 So.2d at 436-37. The trial court found no statutory mitigating factors but "did find the existence of the nonstatutory mitigator of remorse; however, because of Bryant's subsequent actions, very little weight was accorded this circumstance." Id. at 437. Our holding on Bryant's direct appeal that the death sentence was proportional applies here:
Moreover, this Court has upheld death sentences in other cases based upon only two of the three aggravating factors present in the instant case. See Pope v. State, 679 So.2d 710 (Fla.1996) (holding death penalty proportionate where two aggravating factors of murder committed for pecuniary gain and prior violent felony outweighed two statutory mitigating circumstances of commission while under influence of extreme mental or emotional disturbance and impaired capacity to appreciate criminality of conduct and several nonstatutory mitigating circumstances); Melton v. State, 638 So.2d 927 (Fla.1994) (holding death penalty proportionate where two aggravating factors of murder committed for pecuniary gain and prior violent felony outweighed some nonstatutory mitigation); Heath v. State, 648 So.2d 660 (Fla.1994) (affirming defendant's death sentence based on the presence of two aggravating factors of prior violent felony and murder committed during course of robbery, despite the existence of the statutory mitigator of extreme mental or emotional disturbance). Accordingly, we find that death is a proportionate penalty in this case.
Id.;[9]see also Diaz v. State, 860 So.2d 960, 971 (Fla.2003) (finding the death penalty proportionate, despite invalidating an aggravator and the existence of five statutory mitigating circumstances, where two aggravators remained: "(1) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification; and (2) the defendant was previously convicted of another capital felony or of a felony involving use or threat of violence to the person"). The cases we cited all found the death penalty proportionate where the two aggravators of prior violent felony and crime committed for pecuniary gain were involved. Furthermore, two of the sentences were found proportional despite the existence of statutory mitigating circumstances. In Bryant's case, the court found no statutory mitigating circumstances and only a single nonstatutory mitigatorremorse. 785 So.2d at 437. In light of our prior holdings, Bryant's sentence was proportional even without the "avoid arrest" aggravator. Further, no reasonable possibility exists that the trial court would have found the evidence in mitigation sufficient to outweigh the two remaining aggravating circumstances. Therefore, no prejudice resulted from any error on the part of *830 appellate counsel in not challenging the "avoid arrest" aggravator on direct appeal.

III. CONCLUSION
We reverse the trial court insofar as it ruled that it lacked jurisdiction to hear Bryant's 3.851 appeal. When the court struck Bryant's initial postconviction motion, it should have granted leave to amend the motion within a reasonable period. The amendment would have related back to the date of the original motion. We affirm, however, the court's alternate summary findings denying Bryant's ineffective assistance of counsel claims and his claim under Ring and Apprendi. We also deny Bryant's petition for habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., specially concurs with an opinion.
LEWIS, J., concurs in result only.
ANSTEAD, J., specially concurring.
I concur in the majority opinion in all respects, except for its discussion of the decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
NOTES
[1] The facts are taken from Bryant's second direct appeal.
[2] Bryant claimed that the trial court erred in (1) determining that Bryant was competent to stand trial; (2) requiring Bryant to be held in visible restraints before the jury; (3) failing to properly evaluate the nonstatutory mitigating circumstance of Bryant's lack of education; (4) failing to evaluate the nonstatutory mitigator that Bryant lacked a positive role model; (5) failing to exercise its discretion in evaluating the nonstatutory mitigating factor of Bryant's neurological impairment; (6) finding the death sentence proportionate in this case; and (7) ruling that electrocution is not cruel and unusual punishment.
[3] There was a conflict requiring withdrawal of counsel. The State did not oppose this motion.
[4] Judge Mounts, the original trial judge and the judge who struck Bryant's initial postconviction motion, had left the bench by this time. Judge Wennet, sitting in for Judge Brown, ruled on the motion to amend.
[5] For example, the motion failed to attach a copy of the judgment and sentence as required under rule 3.851(e).
[6] Claim three, alleging ineffective assistance of counsel for failure to challenge the "avoid arrest" aggravator, is procedurally barred because trial counsel did object to the use of the aggravator and the matter was preserved for direct appeal. We recognized on direct appeal that this claim had been preserved. See 785 So.2d at 437 (After listing the aggravators found by the trial court, we said, "The first two aggravators were conceded at trial by Bryant, and the ["avoid arrest" aggravator] is not challenged here," indicating that the claim could have been argued on direct appeal.). Claim four, alleging ineffective assistance of counsel for proceeding with voir dire in Bryant's absence, is insufficiently pled and therefore waived. It is also procedurally barred because trial counsel objected to proceeding with voir dire in Bryant's absence and therefore the matter was preserved for direct appeal. Because we find no merit to any of Bryant's ineffective assistance of counsel claims, his fifth claim, based on cumulative error, is also without merit.
[7] Bryant's claim in his petition for habeas corpus that his sentence is unconstitutional under Ring and Apprendi is identical to his Ring and Apprendi claim in his 3.851 appeal. For the reasons discussed in that section of the opinion, Bryant's claim under Ring and Apprendi is denied.
[8] Bryant also relies on Pinkney v. State, 666 So.2d 590 (Fla. 4th DCA 1996), and Holmes v. State, 549 So.2d 1119 (Fla. 1st DCA 1989). These cases also involve unknown or confidential informants and traffic stops.
[9] The Court emphasized that a death sentence has been upheld with only two of the three factors found against Bryant, not because any of the aggravators had been challenged on direct appeal, but in response to Bryant's argument that "the death penalty is disproportionate here because, although he intended to commit an armed robbery ... he did not enter the store with the premeditated design to kill ... and the shooting of Andre was an impulsive action in response to Andre's resistance to the robbery." Bryant, 785 So.2d at 437.