# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D2025-0693

———————————————

MICHAEL EDWARD NORMAN,

  Appellant,

  v.

STATE OF FLORIDA,

  Appellee.

———————————————

On appeal from the Circuit Court for Alachua County.
James M. Colaw, Judge.

May 20, 2026

PER CURIAM.

Michael Edward Norman was convicted of sexual battery on a child under 12 years old, lewd or lascivious molestation on a child under 12 years old, and lewd or lascivious exhibition. After his conviction and sentence were affirmed on appeal, Norman filed a motion that the court construed as a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.

The court denied the motion as facially insufficient, noting the motion failed to meet the oath requirement of rule 3.850(c). But, the court ruled, even if the motion had been properly sworn, the

claims raised were procedurally barred because they were issues that were or could have been litigated at trial and upon direct appeal. The court did not dismiss the motion without prejudice to file a facially sufficient motion; it merely denied the motion. Norman requested leave to correct the insufficiency by submitting a properly sworn oath and asked the court to explain its rulings in greater detail, but the court denied the motion for rehearing.

On appeal, Norman argues that *Spera v. State*, 971 So. 2d 754, 755 (Fla. 2007), and *Rodriquez v. State*, 993 So. 2d 152, 153-64 (Fla. 1st DCA 2008), require the court to provide him with an opportunity to amend his insufficient motion. Norman does not cite rule 3.850, even though it contains the procedure that a court must follow when confronted with an insufficient rule 3.850 motion. When a motion filed under rule 3.850 is timely (which Norman's motion was) but insufficient, subdivision (h)(2) requires the court to "enter a nonfinal, nonappealable order allowing the defendant 60 days to amend the motion." Only if an amended motion is still insufficient, or if the defendant fails to file a timely amended motion, may the court "enter a final, appealable order summarily denying the motion with prejudice." Fla. R. Crim. P. 3.850(h)(2). The Florida Supreme Court added this provision to rule 3.850 in 2013. *In re Amends. to Fla. Rules of Crim. Proc. & Fla. Rules of App. Proc.*, 132 So. 3d 734 (Fla. 2013).[1]

By failing to enter a nonfinal order allowing Norman to amend the motion, it appears that the court violated this rule provision. *See, e.g., Freeman v. State*, 339 So. 3d 496, 497 (Fla. 2d DCA 2022) (reversing an order denying a rule 3.850 motion as insufficient because it failed to permit the movant to file a facially sufficient motion within sixty days); *McCray v. State*, 278 So. 3d 773, 774 (Fla. 3d DCA 2019) (same); *Mackey v. State*, 219 So. 3d 1009 (Fla. 5th DCA 2017) (same). But this conclusion is complicated by *Spera* itself, even though Norman cites it as authority for his claim that the court erred in failing to permit amendment.

---

[1] At the time it was adopted, the current rule 3.850(h)(2) was codified as 3.850(f)(2). *See In re Amends. to Fla. Rules of Crim. Proc. 3.850 & 3.853*, 419 So. 3d 629 (Fla. 2025) (renumbering subdivision (f) of rule 3.850 to subdivision (h)).

2

The requirement for a court to allow a rule 3.850 movant to amend an insufficient motion stemmed from *Spera. See Spera,* 971 So. 2d at 761 ("[W]hen a defendant's initial rule 3.850 motion for postconviction relief is determined to be legally insufficient for failure to meet either the rule's or other pleading requirements, the trial court abuses its discretion when it fails to allow the defendant at least one opportunity to amend the motion. . . . [T]he proper procedure is to strike the motion with leave to amend within a reasonable period."); *see also* Fla. R. Crim. P. 3.850, Court Commentary Rule 3.850(f) (2013) (noting that the 2013 adoption of present-day rule 3.850(h) "codifies existing case law regarding timely but facially insufficient motions" and specifically citing *Spera*).

Because *Spera* was the source of rule 3.850(h)(2), the State argues that rule 3.850(h)(2) implies an exception to its requirements that is contained in *Spera* itself. That is, rule 3.850 movants are permitted to amend defective pleadings "only if they can be amended in good faith." *Spera*, 971 So. 2d at 762.[2] This Court has mentioned this rule of law, but only when reversing an

---

[2] The *Spera* court relied on its earlier decision in *Bryant v. State*, 901 So. 2d 810 (Fla. 2005), where it held that a death-sentenced postconviction movant should have been given the opportunity to amend a facially insufficient postconviction claim. In reaching this conclusion, the *Bryant* court relied on rules in civil proceedings, where "refusal to allow amendment of a complaint is an abuse of discretion unless 'it clearly appears that allowing the amendment would prejudice the opposing party; the privilege to amend has been abused; or amendment would be futile[,]'" or "unless it is apparent that the pleading cannot be amended so as to state a cause of action." *Id.* at 818 (Fla. 2005), *citing Sonny Boy, L.L.C. v. Asnani*, 879 So. 2d 25, 28–29 (Fla. 5th DCA 2004) and *Nev. Interstate Props. Corp. v. City of West Palm Beach,* 747 So. 2d 447, 448 (Fla. 4th DCA 1999). Permitting dismissal without opportunity to amend because such action would be "futile" because "it is apparent that the pleading cannot be amended so as to state a cause of action" provides a clearer standard than the "good faith" standard that courts derive from *Spera*.

3

order because the postconviction court failed to permit amendment to an insufficient rule 3.850 motion. *See, e.g., Griggs v. State*, 995 So. 2d 994, 995 (Fla. 1st DCA 2008) (reversing order denying postconviction relief because a defendant filing a facially insufficient motion under rule 3.850 "should be permitted to amend it, *unless it is clear that a good faith amendment will not cure the deficiency*" (emphasis supplied)); *Copeland v. State*, 225 So. 3d 415 (Fla. 1st DCA 2017) (reversing order denying postconviction relief "*because these deficiencies could be cured by a good faith amendment*[.]" (emphasis supplied)). We have ruled in this manner both before the adoption of rule 3.850(h)(2) (*Griggs*) and after (*Copeland*).

But neither *Griggs* nor *Copeland* involved the affirmance of a denial of postconviction relief, where the postconviction court ruled that the motion was insufficient but failed to provide an opportunity to amend, specifically on the ground that a good faith amendment was impossible. Instead, they merely noted that the appellant was entitled to reversal in order to file an amended motion, if he could in good faith. We are unable to find a case from our district that has refused to require compliance with rule 3.850(h)(2) on the ground that the movant could not amend in good faith.

The Fourth District Court of Appeal, in contrast, has rendered such opinions. When a postconviction court denies a rule 3.850 motion as facially insufficient rather than affording the movant the opportunity to amend the motion, that Court places the burden on the appellant to demonstrate in his initial brief that he could, in good faith, amend the motion to be facially sufficient. *See Hammond v. State*, 34 So. 3d 58, 61 (Fla. 4th DCA 2010) (noting that "the appellant maintains the burden of establishing in the initial brief that a good faith basis exists for amending the motion" and that it will not remand the case if the appellant "fails to show any good faith basis for amendment, and no reasonable good faith basis for amendment appears in the record"). *See also St. James v. State*, 88 So. 3d 999, 1001–02 (Fla. 4th DCA 2012) ("Where the movant's initial brief fails to establish that a claim can be amended in good faith to become legally sufficient, or how it could be done, this court will not reverse a summary denial order and remand to allow further amendments."); *Cortes v. State*, 85 So. 3d 1135, 1139

(Fla. 4th DCA 2012) ("Where a movant files an initial brief, and fails to establish that the claim can be amended in good faith, this court will not remand the matter."). The Fourth District has maintained this rule even since the adoption of rule 3.850(h)(2). *See Jones v. State*, 348 So. 3d 1158 (Fla. 4th DCA 2022) (citing *Hammond*).

Again, rule 3.850(h)(2) contains no exception that would permit an appellate court to dispense with the rule's requirement that a movant be given an opportunity to amend an insufficient rule 3.850 motion, based on the appellate court's determination that the motion cannot be amended in good faith. *Spera* does not require this course: it merely states that movants may amend defective pleadings only if they can do so in good faith.[3]

In reaching this decision, we do not endorse a claim that neither the trial court nor the appellate court ought to be able to determine whether an opportunity to amend is unnecessary because no such amendment could be made in good faith. However, we reach two conclusions: first, rule 3.850(h)(2) does not permit any such exception; and second, *Spera* does not require such an exception.

Accordingly, we REVERSE the order denying relief and remand for the court to allow Norman sixty days to amend his rule 3.850 motion, in accordance with rule 3.850(h)(2).

OSTERHAUS, C.J., and ROBERTS, J., concur; WINOKUR, J., concurs with opinion.

---

[3] *Griggs* may be read to suggest that the postconviction court, rather than the appellate court, is permitted to refuse to permit opportunity to amend based on its conclusion that no good faith amendment would cure the deficiency. Because that did not occur here, we do not address whether rule 3.850(h)(2) permits that procedure.

*Not final until disposition of any timely and
authorized motion under Fla. R. App. P. 9.330 or
9.331.*

WINOKUR, J., concurring.

I fully concur in the majority decision but write separately to make two additional observations.

First, I note that Norman sought, both in this Court and in the postconviction court, the appointment of appellate counsel. This Court denied Norman's motion. But the postconviction court, even though it apparently considered Norman's pro se motion for postconviction relief so devoid of merit that it did not even provide him with an opportunity to amend the motion, chose for no reason apparent in the record to appoint the public defender to represent him on appeal. I believe this appointment violated Florida law.

As I stated in *Jackson v. State*, I contend that the appointment of counsel in postconviction appeals is unauthorized. 407 So. 3d 508-14 (Fla. 1st DCA 2025) (Winokur, J., concurring). In summary, I reached this conclusion for three reasons. First, a postconviction appellant has no constitutional right to appointed counsel. Second, a postconviction appellant has no statutory right to appointed counsel. And third, we are prohibited from using, directly or indirectly, "[f]unds, resources, or employees of this state or its political subdivisions . . . in appellate or collateral proceedings unless the use is constitutionally or statutorily mandated." § 924.051(9), Fla. Stat.

I recognize that such appointment has been authorized by *Russo v. Akers*, 724 So. 2d 1151 (Fla. 1998), but that case is based on an assessment of federal constitutional rights that the Supreme Court of the United States has rejected, as I explain in *Jackson*. But even under *Russo*, a postconviction movant does not have a right to appointed counsel unless authorized under the standards set forth *Graham v. State*, 372 So. 2d 1363 (Fla. 1979). Given the

6

statutory prohibition on appointing counsel unless constitutionally or statutorily mandated, no court should appoint postconviction appellate counsel unless it explicitly concludes that the standards for appointment set forth in *Graham* require it. And when it appoints postconviction appellate counsel, the appellate court should be able to determine why the trial court concluded that counsel was constitutionally required. In this case, we have no idea why the trial court reached this conclusion. Any such order, at the least, should articulate why appointment is constitutionally required and therefore not an unlawful expenditure of state funds, prohibited by section 924.051(9).

Second, Norman contends this Court should recede from *Levin v. State*, 298 So. 3d 681 (Fla. 1st DCA 2020), which recognizes that the appellate court cannot supplement the record in an appeal governed by Florida Rule of Appellate Procedure 9.141(b)(2) unless the material sought is an authorized part of the record as set forth in rule 9.141(b)(2)(A). Summarizing this proceeding will place this argument in context.

Nearly a year after his convictions and sentences were affirmed on appeal, Norman filed in the trial court a document entitled "Motion to Dismiss, or in the Alternative, Motion for Mistrial." Norman attached part of the trial transcript in support of his motion. There, of course, being no procedural basis to dismiss the charges or to grant a mistrial long after his judgment and sentences became final, the trial court construed the filing as a postconviction motion under Florida Rule of Criminal Procedure 3.850. Norman presented three grounds for relief: 1) failure to re-arraign on amended information, 2) failure to provide defense counsel with the amended information, and 3) improper identification procedure. The court denied the motion as facially insufficient for two reasons: first, the motion was unsworn, and second, the claims raised were procedurally barred because they "either were or could have been litigated at trial and upon direct appeal." Norman sought rehearing but did not indicate in the motion that any part of the record would refute the court's conclusions.

In this appeal, Norman contends that he could meaningfully challenge the denial of relief on appeal if he could cite the trial

transcripts, but that *Levin* prevents him from doing so. This argument presents numerous problems.

To begin with, Norman never filed a motion to supplement the record, so *Levin* has no application. Nevertheless, Norman asks us to reconsider our decision in *Levin*. But he provides us with no basis to do so. Because he did not file any motion to supplement the record, we have no idea what the trial transcript would show that might shed light on the postconviction court's decision.[1] We cannot just take Norman's word for it that something exists, but that we would have denied supplementation under *Levin* anyway. We could grant a motion to supplement the record if Norman had filed one—perhaps because we were moved to ignore the rule's provisions by overturning *Levin*—but we cannot simply proclaim that we have changed our minds about *Levin*.

But, again, even if we could, I would reject Norman's suggestion to overturn *Levin*. His argument presumes that, like a regular appeal, he should be permitted to rely on any part of the trial record that he believes would support reversal. This view betrays a fundamental misunderstanding of the purpose and structure of rule 9.141(b)(2).

Rule 9.141(b)(2) sets out special procedures for appeals following summary denial of postconviction motions. These procedures show that an appeal under this subdivision bears little resemblance to a regular appeal. For instance, the appellant is not required to file a brief. Fla. R. App. P. 9.141(b)(2)(C)(i). All he must do is file a notice of appeal, and the appellate court is expected to do the rest: review the order and "record," research the law, and independently conclude whether reversal is called for. An appellant bears no burden to demonstrate reversible error; instead, the appellate court bears the burden to show that *no* reversible error occurred. We do not presume the order to be correct, reversing only if the appellant demonstrates reversible

---

[1] Given the court's reasons for denial—lack of oath and procedural bar because the issues could have been raised at trial—it is difficult to conceive what part of the trial transcript might rebut its conclusions.

error. Instead, we are compelled to presume it *incorrect*, affirming it *only if* we affirmatively determine that the appellant is not entitled to relief. Rule 9.141(b)(2)(D) makes this clear, stating that the appellate court is obligated to reverse "unless the record shows conclusively that the appellant is entitled to no relief[.]"

These rules are plainly at odds with normal rules of appellate procedure, where "[t]he burden is on the appellant to demonstrate reversible error and present an adequate record for review." *JP Morgan Chase Bank v. Combee*, 883 So. 2d 330, 331 (Fla. 1st DCA 2004).

Again, we are *required* to reverse unless "the record," meaning the documents set forth in rule 9.141(b)(2)(A), conclusively shows that no relief is warranted. This rule is utterly contrary to regular appeals, where we *may not* reverse unless appellant presents argument for reversal and provides an adequate record to support reversal.[2] This fundamentally different structure for this type of appeal is possible only because "the record" is specifically limited by subdivision (b)(2)(A). We are obligated to ignore the presumption of correctness that normally attaches to orders under review, and to reverse unless "the motion, response, reply, order on the motion, motion for rehearing, response, reply, order on the motion for rehearing, and attachments" show conclusively that the appellant is entitled to no relief. If we were compelled to review whatever part of the trial record the appellant wants us to, as Norman suggests, then no reason exists to provide a separate appellate procedure that requires us to ignore the usual presumption of correctness. This is not an "overly strict" application, as Norman calls it, this is exactly how rule 9.141(b)(2) is intended to work. *Levin* merely recognizes and properly applies the terms of the rule.

---

[2] *See, e.g., State v. Town of Sweetwater*, 112 So. 2d 852, 854 (Fla. 1959) ("It is an elemental principle of appellate procedure that every judgment, order or decree of a trial court brought up for review is clothed with the presumption of correctness and that the burden is upon the appellant in all of such proceedings to make error clearly appear.").

If postconviction appellants wish to present whatever part of the trial record they believe supports relief, regardless of whether it is an authorized part of the record as set forth in rule 9.141(b)(2)(A), then they should advocate for the repeal of rule 9.141(b). I would wholeheartedly support such an effort. If a compelling reason exists to have a special appellate rule for review of orders denying postconviction motions without hearing, especially one that turns foundational principles of appellate procedure on their heads, it has eluded me. I suspect, however, that most postconviction appellants would rather keep the special procedures of rule 9.141(b)(2), most of which greatly benefit them, but would prefer to ignore the part of the rule—that is, the (necessary) limitation of the record—that they do not like. But we cannot apply only those parts of the rule we like. Either we apply rule 9.141(b)(2) or repeal it. *Levin* applies it. I would just as soon repeal it.

_____

Jessica J. Yeary, Public Defender, and Justin Karpf, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Michael Schaub, Assistant Attorney General, Tallahassee, for Appellee.